PRESENT: All the Justices

WILLIAMS & CONNOLLY, LLP, ET AL.

v. Record Nos. 052376
        and 061195    OPINION BY JUSTICE BARBARA MILANO KEENAN
                              April 20, 2007

PEOPLE FOR THE ETHICAL TREATMENT OF
ANIMALS, INC.

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          David T. Stitt, Judge

     In this appeal, we consider whether the circuit court

abused its discretion in imposing sanctions under Code § 8.01-

271.1 against six attorneys and their respective law firms based

on motions they filed in pending litigation.  Additionally, we

consider whether the circuit court erred in revoking the pro hac

vice admission of one of those attorneys.

     In May 2002, People for the Ethical Treatment of Animals,

Inc. (PETA) filed a motion for judgment against Kenneth Feld,

Richard Froemming, Joel Kaplan, Charles Smith, and John Does 1,

2, and 3, alleging a violation of the Virginia Trade Secrets Act

and common law and statutory conspiracy (PETA I).  Feld was

dismissed from that action by nonsuit, but the litigation in

PETA I remained pending with respect to the other defendants.

In January 2004, PETA filed a second motion for judgment against

Feld and John Does 1, 2, and 3, which contained allegations

similar to those in PETA I (PETA II).

Feld made a motion to consolidate PETA I and PETA II, and in December 2004, Judge David T. Stitt conducted a hearing in the Circuit Court of Fairfax County (circuit court) on Feld's motion (the December hearing). At the December hearing, Judge Stitt advised the attorneys that if they needed to contact his law clerk by telephone, they should make certain that attorneys representing both parties participated in the telephone conference call. The circuit court also advised the parties that the "general" rules applicable to all cases would govern the present litigation.

The circuit court granted Feld's motion to consolidate the trials of PETA I and PETA II, but denied his motion to consolidate discovery in the two cases. After his motion to consolidate was denied, Feld made a motion requesting access to the discovery in PETA I, which the circuit court also denied.

As part of the discovery in PETA I, PETA sought to depose Steven P. Kendall in Alexandria, Virginia on February 11, 2005. PETA did not notify Feld of the deposition because the deposition related only to discovery in PETA I, in which Feld was no longer a party. Apparently aware of PETA's intent to depose Kendall on that date, Feld issued a subpoena for Kendall to appear in Fairfax on the same date. PETA made a motion to quash Feld's subpoena, which the circuit court granted, holding that Feld's subpoena was an attempt to circumvent the court's

2

prior ruling refusing to consolidate discovery in the two actions.

On February 18, 2005, PETA filed in the Clerk's Office of the Circuit Court of Fairfax County a petition for rule to show cause (the petition), requesting that William B. Porter and Joseph G. Petrosinelli, the attorneys who had issued the subpoena for Kendall on behalf of Feld, be held in contempt of court for violating the circuit court's several orders refusing to consolidate discovery in the two cases. PETA did not notify Feld or his attorneys that PETA had filed the petition.

On March 14, 2005, the circuit court issued a rule to show cause based on PETA's petition (the March rule to show cause). The March rule to show cause directed Porter and Petrosinelli to demonstrate why they should not be held in contempt of court for violating the court's orders declining to consolidate discovery in PETA I and PETA II.

The March rule to show cause was issued on Monday, March 14, 2005. On Friday, March 11, 2005, one "business" day before the rule issued, following a hearing on a matter in PETA I (the March hearing), PETA's counsel engaged in an unrecorded bench conference with Judge Stitt. Feld's counsel were not present at the hearing in question because they no longer were involved in PETA I. As a result, Feld's counsel did not know what, if anything, PETA's counsel discussed with Judge Stitt.

3

On April 8, 2005, Porter, Petrosinelli, and four other attorneys representing Feld (collectively, the Feld Attorneys) filed a motion to recuse and a motion to vacate, each with accompanying memoranda (the Feld Attorneys' motions). The Feld Attorneys argued in their motion to recuse that Judge Stitt had violated his ethical duties by considering PETA's ex parte petition and issuing the March rule to show cause. The Feld Attorneys also alleged in that motion that Judge Stitt had engaged in unethical conduct because he "kept the [p]etition secret for nearly a month."

The Feld Attorneys alleged that, in addition to Judge Stitt's "inexcusable" consideration of PETA's ex parte petition, Judge Stitt had engaged in other impermissible ex parte communications that required his recusal, including a telephone call PETA placed to Judge Stitt's chambers and two statements PETA allegedly made at the unrecorded bench conference during the March hearing in PETA I. The Feld Attorneys also alleged that PETA's counsel made a statement at the March hearing in PETA I that he planned to contact Judge Stitt by telephone to set a date for the consolidated trials of PETA I and PETA II.[1] The Feld Attorneys conceded in the motion to recuse that they

_____

[1] The motion to recuse quoted a portion of the hearing in which Judge Stitt responded to PETA's request to set a trial date, stating, "Get everyone on a conference call on Monday morning . . . if you want to make that motion. . . ."

4

were not present at the March hearing in PETA I, and that they did not know what transpired at the bench conference. The Feld Attorneys further conceded that they did not know if PETA, in fact, had placed any telephone calls to Judge Stitt after the March hearing.

The Feld Attorneys asserted in the motion to recuse that Judge Stitt's actions demonstrated his "actual bias" in favor of PETA because his consideration of PETA's petition was "wholly untenable under fundamental concepts of contempt law" and "show[ed] at least an appearance of favoritism toward PETA because he had previously warned both sides to refrain from engaging in ex parte contacts with the [c]ourt." In the motion to recuse, the Feld Attorneys accused Judge Stitt of "ignoring the basic tenets of contempt law," "ignor[ing] the law in order to give a strategic advantage to PETA," and "endors[ing] the [March rule to show cause] merely because PETA requested that he do so." The Feld Attorneys further asserted that Judge Stitt's "finding of [an] apparent violation [of the court's discovery order] is itself preposterous given the most basic law on contempt." In the memorandum in support of the motion to recuse, the Feld Attorneys asserted that "only a judge with bias or predisposition against a party could have issued [the March rule to show cause]."

In the motion to vacate, the Feld Attorneys argued that the March rule to show cause should be dismissed because Petrosinelli and Porter did not violate any discovery order of the circuit court. The Feld Attorneys additionally argued in the motion to vacate that the March rule to show cause should be "discharged because of the improper ex parte procedures by which it was sought and entered," and incorporated by reference the arguments set forth in the motion to recuse.

PETA filed a motion for sanctions and an amended supplemental motion for sanctions (collectively, motions for sanctions), requesting that the circuit court impose sanctions on the Feld Attorneys and their law firms, Williams & Connolly LLP and Blankingship & Keith, PC, based on the Feld Attorneys' motions. PETA argued that sanctions under Code § 8.01-271.1 were appropriate because the Feld Attorneys' motions were not grounded in fact and were not warranted by law, and because pleadings and motions filed with an improper purpose are subject to sanctions under clause (iii) of the second paragraph of Code § 8.01-271.1. PETA further asserted that the Feld Attorneys' motions were filed "in order to insult" the circuit court and constituted "a frontal attack" on the court.

The Feld Attorneys filed a motion in opposition to PETA's motions for sanctions, arguing that they did not make fraudulent assertions in the motion to recuse because they did not allege

6

that the ex parte communications between PETA and Judge Stitt "actually" occurred, but only that the communications "apparently" occurred. The Feld Attorneys further asserted that they were "forced to speculate" about the contents of the communications because they were no longer participants in the proceedings in PETA I.

The circuit court conducted a hearing in April 2005 on the March rule to show cause (the April hearing). Feld argued at the April hearing that the circuit court should consider the motion to vacate and the motion to recuse, which were filed the day before the April hearing, prior to ruling on the March rule to show cause. Judge Stitt agreed, and deferred ruling on the March rule to show cause until the circuit court had an opportunity to consider the motion to recuse and the motion to vacate, and PETA had been provided an opportunity to file briefs in response. Although the April hearing did not concern the merits of the motion to recuse or the motion to vacate, Judge Stitt explained at that hearing that rules to show cause are routinely issued in the Circuit Court of Fairfax County based on ex parte petitions that are filed without notice to the opposing party.

In May 2005, the circuit court conducted a hearing on the Feld Attorneys' motions (the May hearing). Judge Stitt concluded that the Feld Attorneys' motions were filed "without

7

reasonable legal and factual inquiry." Judge Stitt also noted at the May hearing, "I've never seen anything like [the language in the Feld Attorneys' motions] outside of something filed by pro se [litigants] . . . . And the tone of that motion to recuse . . . it's unacceptable, it's contemptuous . . . it's full of distortions of different things, twisting the meanings of things."

The circuit court indicated that based on the Feld Attorneys' motions, the court planned to impose sanctions against the Feld Attorneys but delayed ruling on the amount of the award. The circuit court additionally took under advisement the possibility of imposing criminal contempt penalties. Following the May hearing, the circuit court denied both the motion to recuse and the motion to vacate.

In July 2005, the circuit court, acting sua sponte, issued a rule to show cause (the July rule to show cause) on the issue whether criminal contempt penalties were warranted based on the Feld Attorneys' motions and Feld's opposition to PETA's motions for sanctions. The July rule to show cause also directed the Feld Attorneys to show cause why the pro hac vice admission of four of the Feld Attorneys, including Barry S. Simon, should not be revoked.

The circuit court conducted a hearing on PETA's motions for sanctions in August 2005 (the August hearing). At the hearing,

PETA's counsel explained the numerous sources PETA had consulted prior to filing the petition without notifying Feld, including placing a telephone call to a deputy clerk of the circuit court to determine the customary practice for filing petitions for rules to show cause.

At the August hearing, the circuit court stated that it planned to impose sanctions under Code § 8.01-271.1 based on its findings that the Feld Attorneys' motions were not grounded in fact, were not warranted by law, and contained "contemptuous" language. The circuit court dismissed the July rule to show cause, stating that the court was declining to impose criminal contempt penalties under Code § 18.2-456. The circuit court also revoked Simon's pro hac vice admission based on Simon's shared responsibility for the content of the Feld Attorneys' motions.

After the August hearing, the circuit court granted PETA's motions for sanctions and entered an order revoking Simon's pro hac vice admission and imposing sanctions against the Feld Attorneys and their law firms in the amount of $40,000. On the same day, the circuit court issued an order holding Petrosinelli in contempt of court based on the March rule to show cause and

dismissing the March rule with respect to Porter.[2]  The Feld

Attorneys appeal the circuit court's imposition of sanctions and

revocation of Simon's pro hac vice admission to the bar of this

Commonwealth.

Analysis

We review the circuit court's imposition of sanctions under

Code § 8.01-271.1 pursuant to an abuse of discretion standard.

Ford Motor Co. v. Benitez, 273 Va. 242, 249, 639 S.E.2d 203, 206

(2007); Flora v. Shulmister, 262 Va. 215, 220, 546 S.E.2d 427,

429 (2001); Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 65,

547 S.E.2d 216, 227 (2001).  The second paragraph of Code

§ 8.01-271.1 sets forth the three certifications made by an

attorney upon signing a pleading:

> The signature of an attorney or party constitutes a
> certificate by him that (i) he has read the pleading,
> motion, or other paper, (ii) to the best of his knowledge,
> information and belief, formed after reasonable inquiry, it
> is well grounded in fact and is warranted by existing law
> or a good faith argument for the extension, modification,
> or reversal of existing law, and (iii) it is not interposed
> for any improper purpose, such as to harass or to cause
> unnecessary delay or needless increase in the cost of
> litigation.

A court's authority to award sanctions under Code § 8.01-271.1

is explicitly stated in the statute:

---

[2] The circuit court's contempt finding against Petrosinelli
is challenged in a separate appeal, Petrosinelli v. People for
the Ethical Treatment of Animals, 273 Va. ___, ___ S.E.2d ___
(2007).

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

The three enumerated certifications contained in the second paragraph of Code § 8.01-271.1 are stated in the conjunctive. Thus, under the terms of the statute, an attorney makes all three representations when signing the described documents. Code § 8.01-271.1; Benitez, 273 Va. at 251, 639 S.E.2d at 207. With regard to acts of attorneys, the manifest purpose of the statute is to hold attorneys, who are officers of the court, responsible for specified failures involving the integrity of the documents that they have signed.

Because an attorney certifies compliance with all three enumerated clauses of the second paragraph of Code § 8.01-271.1 when signing a motion, pleading, or paper, the attorney's failure to comply with any one of these statutory requirements invokes the sanctions provisions of the statute. Benitez, 273 Va. at 251, 639 S.E.2d at 207. Under the plain language of the statute, a court "shall impose . . . an appropriate sanction" when the record shows that a pleading, motion, or other paper is "signed or made in violation of this rule." Code § 8.01-271.1; see Benitez, 273 Va. at 249, 639 S.E.2d at 206; Flora, 262 Va.

11

at 220, 546 S.E.2d at 429; Oxenham v. Johnson, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991). Therefore, in reviewing the circuit court's imposition of sanctions in the present case, we consider whether the record supports a conclusion that the Feld Attorneys' motions (the motions) violated any one of the three statutory requirements found in the second paragraph of the statute.

Clause (i) of the second paragraph, which states that an attorney's signature certifies that he has read a motion, pleading, or paper before signing the document, is not at issue in this appeal. Thus, we focus our attention on clauses (ii) and (iii) of the second paragraph of Code § 8.01-271.1. We employ an "objective standard of reasonableness" in evaluating the written representations the Feld Attorneys made in the motions. Benitez, 273 Va. at 253, 639 S.E.2d at 208; Flippo, 262 Va. at 65-66, 547 S.E.2d at 227. Pursuant to that standard, we consider whether "after reasonable inquiry, [counsel] could have formed a reasonable belief that the pleading[s] [were] well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for an improper purpose." Flippo, 262 Va. at 65-66, 547 S.E.2d at 227; accord, Gilmore v. Finn, 259 Va. 448, 466, 527 S.E.2d 426, 435-36 (2000).

12

## Clause (ii) — Factual Basis

The Feld Attorneys argue that their motions were well
grounded in fact within the meaning of clause (ii) of the second
paragraph of Code § 8.01-271.1.  Although the motion to recuse
contains numerous allegations, the Feld Attorneys in their brief
filed in this Court rely on five essential alleged facts that
they state "provided the impetus for the [m]otion to [r]ecuse."[3]
The Feld Attorneys contend that the motions were well grounded
in fact because they were supported by the following alleged
facts: 1) PETA submitted ex parte and without notice the
petition for a rule to show cause making serious charges against
two of the Feld Attorneys; 2) PETA allegedly did not file the
petition with the Clerk of the circuit court but submitted the
petition directly to Judge Stitt; 3) Judge Stitt allegedly held
the petition for three weeks without notifying the Feld
Attorneys of the petition; 4) Judge Stitt considered the ex
parte petition for a rule to show cause after having admonished
all attorneys to refrain from ex parte contacts in the case; and
5) Judge Stitt issued the rule to show cause one "business" day
after allegedly conducting an ex parte bench conference with
PETA's counsel in a trial in which the Feld Attorneys were not
involved.  The Feld Attorneys assert that these alleged facts

---

[3] As set forth above, the additional factual bases the Feld
Attorneys allege in support of their motions were actions taken
by PETA, not by Judge Stitt.

13

provided an objectively reasonable factual basis for their recusal request. We disagree with this conclusion.

Initially, we are compelled to observe that the Feld Attorneys' brief filed with this Court contains a striking omission. The Feld Attorneys do not mention the fact that in the motions, they used language that directly accused Judge Stitt of unethical conduct. These allegations of unethical conduct were stark and sweeping, stating that Judge Stitt "[v]iolated [h]is [e]thical [o]bligations," "ignored his ethical responsibilities," and "acted directly counter to [those ethical responsibilities]." We therefore must consider the Feld Attorneys' arguments in the additional context of those written statements contained in the motions.

Upon review of these allegations, we conclude that the record does not support the Feld Attorneys' argument that there was an adequate factual basis for the motions. At least three of the alleged facts on which the Feld Attorneys rely are inaccurate. Other facts that the Feld Attorneys cite involve conduct attributable only to PETA, not to Judge Stitt. In addition, the Feld Attorneys' argument relies on speculation and, thus, is self-refuting of a conclusion that the motions were well grounded in fact.

The first alleged fact on which the Feld Attorneys rely is that PETA filed the petition for a rule to show cause ex parte

14

and without notice.  This filing, however, was an action taken by PETA, not by Judge Stitt.  Thus, that action was not relevant to the issues whether Judge Stitt had engaged in unethical conduct or had shown actual bias in favor of PETA and provided no factual support for the Feld Attorneys' assertion that Judge Stitt had acted in such a manner.[4]

The second alleged fact on which the Feld Attorneys rely is their assertion that counsel for PETA did not file the petition for a rule to show cause in the Clerk's Office and instead submitted the petition directly to Judge Stitt.  Although counsel for PETA indicated in a "cover" letter to the petition dated February 18, 2005, that he intended to deliver the petition to Judge Stitt, the record before us shows that the petition actually was filed in the Clerk's Office on February 18, 2005.  This filing in the Clerk's Office is shown by the Clerk's date stamp, which appears on the face of the petition in the right-hand corner of the pleading.  The "cover" letter also was filed in the Clerk's Office on February 18, 2005, as shown by the Clerk's date stamp appearing in the right-hand corner of

---

[4] The Feld Attorneys assert in their brief to this Court that they merely alleged in the motion to recuse that Judge Stitt's actions created an "appearance" of bias. In fact, the motion to recuse alleged on at least five separate occasions that Judge Stitt's consideration of the petition suggested or indicated his "actual bias."  In addition, the Feld Attorneys argued that various actions undertaken by Judge Stitt were an "indication of Judge Stitt's lack of impartiality," and that Judge Stitt showed "favoritism toward PETA."

that document.  Thus, the record before us refutes the Feld Attorneys' contention that the petition was not filed in the Clerk's Office but was "filed" privately with Judge Stitt.  We also observe that because the filing of the petition was an action taken by PETA, not by Judge Stitt, that act of filing could not have provided a factual basis for arguing that Judge Stitt acted unethically or had shown actual or apparent bias in favor of PETA.

Nevertheless, the Feld Attorneys advance as a third alleged fact supporting the motion to recuse their contention that Judge Stitt "held" the petition for a rule to show cause in his chambers for three weeks.  They specifically alleged in their motion to recuse that Judge Stitt "kept the petition secret for nearly a month."  The record does not support these assertions.

There is no evidence in the record that Judge Stitt actually received the petition the day it was filed.  The record likewise does not show the date on which Judge Stitt received the petition for review.  Moreover, the record shows that no one "held" the petition "in secret" for several weeks.  Instead, as stated above, the record shows that the petition was filed in the Clerk's Office on February 18, 2005, the same day that the petition was delivered to the courthouse.  Thus, the Feld Attorneys had no basis in fact for alleging on April 8, 2005,

16

the date of the motions, that Judge Stitt improperly "held" the petition "in secret" for any period of time.

The fourth alleged fact cited by the Feld Attorneys as supporting the motions is that PETA's counsel and Judge Stitt participated in an unrecorded bench conference on the Friday before the Monday date when Judge Stitt entered the rule to show cause. This unrecorded conference occurred during a hearing in PETA I in which the Feld Attorneys were not involved, and they concede that at the time they filed the motions, they did not know the substance of the unrecorded bench conversation. Thus, at the time they filed the motions, the Feld Attorneys merely speculated, without any basis in fact, that the timing of the bench conference provided a factual basis in support of the motions.

The fifth alleged fact on which the Feld Attorneys rely is their contention that Judge Stitt issued the rule to show cause after admonishing "the parties against any ex parte contacts, including even ministerial contacts with his law clerk." In his directive of December 9, 2004, Judge Stitt stated:

> [I]f you need to contact my law clerk, . . . just get somebody from the other side on the line. The way this case is going, we're going to be real careful with things like that. There's been an awful lot of correspondence to the court and things, and we're just going to have to formalize it a little bit. . . . The general rules regarding filings of motions, long briefings, and scheduling motions and so on, they apply to this case just

17

like they apply to everything else. They need to be abided by. (Emphasis added.)

This admonition plainly was intended to prohibit ex parte telephone communications with Judge Stitt's law clerk. Judge Stitt's further comments demonstrate that he did not intend to alter in any other manner the routine practices of the Circuit Court of Fairfax County. Thus, Judge Stitt's issuance of the March rule to show cause after placing restrictions on the parties' telephone access to his law clerk did not provide a factual basis for the Feld Attorneys' assertions in the motions that Judge Stitt had acted unethically and with actual bias in issuing the March rule.

We hold that these five bases advanced by the Feld Attorneys fail to establish a well grounded factual foundation for the motions. The Feld Attorneys' failure to comply with this requirement of clause (ii) of the second paragraph of Code § 8.01-271.1, of itself, supports the circuit court's imposition of sanctions. Benitez, 273 Va. at 250-51, 639 S.E.2d at 207.

Although this holding ordinarily would end further consideration of the arguments raised in this appeal, we nevertheless address the Feld Attorneys' remaining arguments concerning the other provisions of Code § 8.01-271.1. In view of the serious allegations the Feld Attorneys made against Judge Stitt in the motions, we conclude that it is appropriate to have

18

a complete record addressing all the matters raised in this appeal.

Clause (ii) — Basis in Law

The Feld Attorneys argue that the motions also complied with the "law" component of clause (ii), because the motions were warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law. See Code § 8.01-271.1. Further narrowing the focus of this provision, the Feld Attorneys contend that the motions were warranted by existing law.

In support of their argument, the Feld Attorneys rely primarily on two Rules of this Court, Rule 1:12 and Rule 4:15, and on Canon 3(B)(7) of the Canons of Judicial Conduct. The Feld Attorneys contend that the two cited Rules of Court provided an objectively reasonable basis for the motions because those Rules collectively require that counsel of record in a case be given notice and provided copies of all pleadings, motions, and other papers filed in a pending case. The Feld Attorneys also assert that Canon 3(B)(7) of the Canons of Judicial Conduct, which severely restricts a judge's consideration of ex parte communications, provided an objectively reasonable basis in law supporting the motions. We disagree with these arguments.

19

Initially, we observe that Rule 1:12 requires that an attorney serve other counsel of record with copies of all pleadings, motions, and other papers "not required to be served otherwise." Id. This Rule imposes a duty on counsel, not on the circuit court judge hearing a case. Thus, while the Feld Attorneys may have had a legal basis under Rule 1:12 for arguing that Judge Stitt committed error in considering the petition for a rule to show cause when PETA had not served a copy of the petition on the Feld Attorneys, Rule 1:12 did not provide an objectively reasonable basis on which to argue that Judge Stitt had violated his ethical duties and had shown actual bias in considering the petition.

The provisions of Rule 4:15 likewise did not provide an objectively reasonable basis supporting the Feld Attorneys' assertion that Judge Stitt violated his ethical obligations and had shown actual bias in considering the petition for a rule to show cause. Like Rule 1:12, the provisions of Rule 4:15 cited by the Feld Attorneys assign duties to counsel of record, not to a circuit court judge hearing a case. Thus, in providing that "[r]easonable notice of the presentation of a motion shall be served on all counsel of record," Rule 4:15(b) imposes on counsel filing a written motion the duty to notify opposing counsel of the intent to argue a matter before the circuit court.

20

Because the cited provisions in Rules 1:12 and 4:15 do not impose any duties on a circuit court judge, those provisions did not provide an objectively reasonable basis on which to argue that Judge Stitt had violated his ethical responsibilities and had shown actual bias.  Therefore, we consider the remaining authority cited by the Feld Attorneys, Canon 3(B)(7) of the Canons of Judicial Conduct, which provides in material part:

> A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
>
> > (a)  Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
> > > (i)The judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

Although the Canons of Judicial Conduct are not a source of law, we nevertheless consider the cited provision from the Canons because they are "instructive" on a central issue before us, namely, whether the Feld Attorneys had an objectively reasonable basis in law for contending that Judge Stitt violated his ethical duties in considering the ex parte petition and in issuing the rule to show cause.  See Wilson v. Commonwealth, 272

21

Va. 19, 28, 630 S.E.2d 326, 331 (2006).  Thus, we review Canon 3(B)(7) to determine whether it provided an objectively reasonable basis for the Feld Attorneys' motions.

We first observe that Canon 3(B)(7) addresses "ex parte communications."  This provision plainly is intended to restrict private oral and written communications with a judge and does not encompass pleadings that have been filed as a matter of public record with the clerk of a circuit court.[5]  In contrast to private communications prohibited under Canon 3(B)(7), a rule to show cause is a procedural mechanism, employed as part of the public record in a case, that serves to place matters at issue before a court.  A court's entry of such a rule affords all parties in a case an opportunity to be heard on the merits of the allegations prior to the court making any substantive findings of fact or any conclusions of law.  See James v. James, 263 Va. 474, 478-79, 562 S.E.2d 133, 135-36 (2002).

The question remains, however, whether after reasonable inquiry by the Feld Attorneys, this provision in Canon 3(B)(7) provided an objectively reasonable basis for their argument that Judge Stitt's consideration of the petition and issuance of the rule to show cause was a violation of his ethical duties.  See

---

[5] The "commentary" to Cannon 3(B)(7) does not discuss or refer to pleadings as a "communication."

22

Code § 8.01-271.1.  We conclude that the Feld Attorneys' argument based on Canon 3(B)(7) was not objectively reasonable.

Reasonable inquiry by the Feld Attorneys would have shown that the routine practice of the Circuit Court of Fairfax County is to consider ex parte petitions for a rule to show cause and to issue rules to show cause upon the filing of a sufficient affidavit by the petitioning party.  At the time the Feld Attorneys made the motions, there was a long-standing published order entered in the Circuit Court of Fairfax County stating: "It is the practice of this Court to issue summons on a rule to show cause upon affidavit or ex parte evidence without notice. The [r]ule simply puts the matter at issue . . . . Notice to the opposing party always is given thereafter by service of process and opportunity to be heard."  Fairfax County v. Alward, 33 Va. Cir. 28, 28 (Va. Cir. Ct. 1993).

The published order in Alward, available upon simple legal research, would have informed the Feld attorneys that Judge Stitt merely followed the routine practice of the Circuit Court of Fairfax County when he considered the petition and issued the rule to show cause.  In addition, the record shows that counsel for PETA obtained this same information concerning this routine practice of the Circuit Court of Fairfax County by placing a telephone call to a deputy clerk of the circuit court.

23

We are not persuaded by the Feld Attorneys' argument distinguishing the holding in Alward on the basis that it involved a chancery suit, rather than an action at law.[6] The holding in Alward was not based on such a distinction. Moreover, even if this distinction provided the Feld Attorneys a basis for arguing that Judge Stitt committed error in considering and issuing the rule to show cause in an action at law, that distinction did not provide an objectively reasonable basis for arguing that Judge Stitt acted unethically in doing so.

We emphasize that the legal issue the Feld Attorneys were required to consider, in drafting the motions alleging unethical conduct against Judge Stitt, was whether there was a reasonable basis in law for arguing that Judge Stitt had engaged in unethical conduct, not whether there was a reasonable basis for arguing that the routine practice of the Circuit Court of Fairfax County was erroneous because that practice was in conflict with other legal authority. In their argument before this Court, the Feld Attorneys confuse these two separate issues.

Although the Feld Attorneys correctly observe that local practice cannot alter substantive rights of parties provided by

---

[6] As of January 1, 2006, Virginia abolished the procedural distinctions between actions at law and suits in chancery.

24

statute, Rules of Court, and case law of this Court, see Lee v. Mulford, 269 Va. 562, 566-67, 611 S.E.2d 349, 351 (2005), the Feld Attorneys did not argue in their motions that the local practice of the Circuit Court of Fairfax County conflicted with such legal authority.  Instead, the Feld Attorneys argued that Judge Stitt acted unethically, when reasonable inquiry on their part would have shown that there was no basis for such a charge. Thus, even if the Feld Attorneys were warranted by law in advocating for the reversal of the routine practice of the Circuit Court of Fairfax County, their allegations were not objectively reasonable in accusing Judge Stitt of unethical conduct simply because he followed that routine practice. Accordingly, we hold that the record supports the circuit court's award of sanctions on this separate basis that the Feld Attorneys' motions were not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, as required by clause (ii) of the second paragraph of Code § 8.01-271.1.

### Clause (iii) – Improper Purpose

We next consider whether the provisions of clause (iii) of the second paragraph of Code § 8.01-271.1 provided an independent basis for the circuit court's award of sanctions against the Feld Attorneys.  The Feld Attorneys argue that Judge Stitt did not find that the motions were filed for an "improper

25

purpose." The Feld Attorneys note that while Judge Stitt referenced language in clause (ii) of the second paragraph of Code § 8.01-271.1 when imposing sanctions, he did not make a parallel reference to language in clause (iii). Alternatively, the Feld Attorneys assert that the motions were not filed for an improper purpose but were filed "for the manifest and valid purpose of seeking the Trial Judge's recusal." We disagree with the Feld Attorneys' arguments.

Judge Stitt stated that he was imposing sanctions under Code § 8.01-271.1 and, although he did not make specific reference to the language of clause (iii) when stating his decision, the record is replete with references in which he described the "unacceptable" and "contemptuous" character of the Feld Attorneys' motions. In addition, in rendering his decision, Judge Stitt stated that he was granting PETA's motion for sanctions, which was based on both clauses (ii) and (iii) of the second paragraph of Code § 8.01-271.1. We therefore consider whether the record supports a conclusion that the Feld Attorneys violated Code § 8.01-271.1 on the ground that the motions were filed for an improper purpose.

The fact that the Feld Attorneys were seeking the recusal of the trial judge did not permit them to use language that was derisive in character. Yet they liberally employed such language. As stated above, the Feld Attorneys alleged in the

26

motion to recuse that Judge Stitt "ignor[ed] the basic tenets of contempt law," "create[d] an appearance, at the very least, that [he] will ignore the law in order to give a strategic advantage to PETA," and "ignored his ethical responsibilities [and] acted directly counter to them."

The circuit court made several observations concerning the language used by the Feld Attorneys.  The circuit court noted, "[T]here is some very contemptuous language in those filings.  It's unacceptable."  The circuit court further observed, "I've never seen anything like [the language in the Feld Attorneys' motions] outside of something filed by pro se [litigants] . . . ."

Additionally, the court found that the pleadings were not helpful to determining the issues in the case.  The circuit court stated, "[N]ot only do I not find there's a legal basis for [the motion to recuse], but the things that are in this motion, some of them didn't even happen, and the rest of them were either twisted or distorted in a manner that I found to be highly inappropriate."

The circuit court declined to hold the Feld Attorneys in criminal contempt under Code § 18.2-456(3) for their use of contemptuous language.  Explaining its decision, the circuit court stated that "contempt findings do have some very serious ramifications for attorneys' careers," and "[the] contempt power

absolutely is to be used sparingly, and I think I can accomplish what I need to in this situation without it." Thus, the record shows that the circuit court elected to use the sanctions provisions of Code § 8.01-271.1 in lieu of the stronger contempt power.

We hold that the record before us demonstrates that the Feld Attorneys' motions were filed for an improper purpose and, thus, violated clause (iii) of the second paragraph of Code § 8.01-271.1. Contemptuous language and distorted representations in a pleading never serve a proper purpose and inherently render that pleading as one "interposed for [an] improper purpose," within the meaning of clause (iii) of the second paragraph of Code § 8.01-271.1. Such language and representations are wholly gratuitous and serve only to deride the court in an apparent effort to provoke a desired response.

As we held in Taboada v. Daly Seven, Inc., 272 Va. 211, 215-16, 636 S.E.2d 889, 891 (2006), clause (iii) of the second paragraph of Code § 8.01-271.1 "is designed to ensure dignity and decorum in the judicial process. This provision deters abuse of the legal process and fosters and promotes public confidence and respect for the rule of law." Id. at 216, 636 S.E.2d at 891.

We observe that clause (iii) in the second paragraph of the statute also is intended to prevent use of intemperate language

28

that serves no objective purpose other than to ridicule or deride a court. Because the language found in the Feld Attorneys' motions clearly falls within this proscription, we hold that the Feld Attorneys' motions were filed with an "improper purpose," within the meaning of clause (iii).

The Feld Attorneys argue, nevertheless, that the circuit court erred in its award of sanctions because that award was based in part on the motion to vacate the rule to show cause against Petrosinelli and Porter (motion to vacate). The Feld Attorneys assert that the motion to vacate was objectively reasonable because Petrosinelli and Porter did not violate any order of the circuit court.

In deciding this issue, we recognize that the circuit court dismissed the March rule to show cause against Porter. Also, we have held in Petrosinelli v. People for the Ethical Treatment of Animals, 273 Va. ___, ___, ___ S.E.2d ___, ___(2007) (this day decided), that the circuit court abused its discretion in holding Petrosinelli in contempt of court. These holdings establish that the motion to vacate was "warranted by existing law" to the extent that it argued that Petrosinelli and Porter should not be held in contempt of court. However, the determinative consideration before us is that the motion to vacate additionally incorporated by reference the motion to recuse, which we have held was not warranted by existing law or

29

a good faith argument for the extension, modification, or reversal of existing law, and was filed for an improper purpose. Therefore, because the Feld Attorneys made the motion to recuse part of their motion to vacate, the circuit court did not abuse its discretion in basing its award of sanctions in part on the motion to vacate.[7]

The Feld Attorneys also contend that the circuit court "erred in sanctioning the Feld Attorneys for filing Feld's [o]pposition to PETA's [a]mended and [s]upplemental [m]otion for [s]anctions." The record, however, fails to show that this pleading was a basis for the circuit court's award of sanctions. As stated above, the circuit court granted PETA's motion for sanctions and PETA's Amended and Supplemental motion for sanctions. Neither of those motions for sanctions contained any reference to the Feld Attorneys' opposition to sanctions. Therefore, we conclude that the Feld Attorneys' argument on this issue is without merit because it is not supported by the record.[8]

---

[7] The Feld Attorneys note that Judge Stitt found that the motion to vacate "incorporated" the motion to recuse. The Feld attorneys do not challenge this conclusion, but argue only that the motion to recuse was objectively reasonable.

[8] Although the July rule to show cause mentions the opposition to sanctions as a pleading that the circuit court considered at its May 25, 2005 hearing, the July rule to show cause was ultimately dismissed. In addition, although the circuit court stated at the hearing on the July rule to show cause that the parties were in court on "five pleadings,"

In summary, we conclude that the record demonstrates the Feld Attorneys committed three separate violations of Code § 8.01-271.1, each of which independently supports the circuit court's impositions of sanctions. On these three separate bases, we hold that the circuit court did not abuse its discretion in imposing sanctions on the Feld Attorneys under Code § 8.01-271.1.[9]

<u>Revocation of Pro Hac Vice Admission</u>

The Feld Attorneys also argue that the circuit court abused its discretion in revoking Simon's pro hac vice admission. The Feld Attorneys contend that Simon did not engage in any misconduct, because the content of the motions was objectively reasonable. We disagree with the Feld Attorneys' arguments.

This Court has not previously determined the standard of review for a court's revocation of an attorney's pro hac vice admission.[10] In Virginia, the admission of attorneys on a pro hac vice basis is governed by Rule 1A:4, which authorizes courts in this Commonwealth to permit counsel who are not licensed or

including the opposition to sanctions, the circuit court ultimately granted PETA's motion for sanctions consisting of two separate documents, neither of which mentioned the opposition to sanctions.

[9] We do not address the amount of the sanctions award because the Feld Attorneys have not assigned error regarding the amount of the award.

[10] We observe that certain amendments to Rule 1A:4 will become effective July 1, 2007. Rule 1A:4, as amended, will provide that the "grant or denial" by a court of a motion to proceed pro hac vice is discretionary.

admitted to practice law in this jurisdiction, but are licensed to practice law in another state or in the District of Columbia, to appear as counsel in a particular case.

An attorney who is not licensed or admitted to practice law in this Commonwealth does not have a right to appear as counsel but may request permission to do so on a limited and temporary basis related to the conduct of a particular case. See Rule 1A:4. Such a pro hac vice admission is a privilege that is solely permissive in nature. See id. (referring to permission to appear as a "privilege"); Ortiz v. Barrett, 222 Va. 118, 127, 278 S.E.2d 833, 837 (1981) (referring to attorney licensed in another jurisdiction as having "privilege" to file pleading in Virginia court); Horne v. Bridwell, 193 Va. 381, 385, 68 S.E.2d 535, 538 (1952) (explaining that attorney licensed in foreign jurisdiction must prove existence of that license before obtaining "privilege" of appearing as counsel in Virginia); see also Thomas v. Cassidy, 249 F.2d 91, 92 (4th Cir. 1957) (holding that pro hac vice appearances are not a "right but a mere privilege").

We hold that Virginia courts have broad discretion in determining whether to revoke an attorney's pro hac vice admission. A court may revoke the pro hac vice admission of counsel at any stage of court proceedings when it appears that counsel's conduct adversely impacts the administration of

justice.  See United States v. Gonzalez-Lopez, 399 F.3d 924, 929

(8th Cir. 2005), aff'd, ___ U.S. ___, 126 S.Ct. 2557 (2006);

United States v. Ries, 100 F.3d 1469, 1471 (9th Cir. 1996);

State Industries, Inc. v. Jernigan, 751 So.2d 680, 682 (Fla.

Dist. Ct. App. 2000).

In deciding to revoke Simon's pro hac vice admission, the

circuit court explained:

> [T]he conduct of the defense in this case generally to date
> has reflected a very inadequate understanding of Virginia's
> ethical requirements, much less an understanding of the
> level of professionalism that our [C]hief [J]ustices, the
> current one and the previous one, as well as many others in
> the [S]tate have worked so hard to instill.  Admission pro
> hac [vice] is not a right, it's a courtesy and a privilege,
> and considering everything that's happened in this case,
> particularly these filings, Mr. Simon's pro hac vice
> [admission] is revoked.

The circuit court's conclusion that the Feld Attorneys'

pleadings did not reflect the level of professionalism expected

of attorneys in Virginia demonstrates that the circuit court

carefully considered the issue before revoking Simon's pro hac

vice admission.  All the Feld Attorneys were equally responsible

for the pleadings they filed.  Therefore, we conclude that when,

as here, a circuit court acts within its discretion in imposing

sanctions on attorneys for pleadings they have filed in

violation of Code § 8.01-271.1, the circuit court does not abuse

its discretion in revoking the pro hac vice admission of one of

the attorneys who filed those pleadings.  Accordingly, we hold

33

that the circuit court did not abuse its discretion in revoking Simon's pro hac vice admission in this case.

For these reasons, we will affirm the circuit court's judgment.

Affirmed.

JUSTICE AGEE, with whom JUSTICE KINSER joins, concurring in part and dissenting in part.

I concur with the majority opinion's analysis of the motion to recuse as it relates to the award of sanctions by the circuit court under Code § 8.01-271.1. The record would support a finding by the circuit court that portions of the motion to recuse were not well grounded in fact or warranted by existing law and were interposed for an improper purpose within the meaning of clauses (ii) and (iii) of the second paragraph of Code § 8.01-271.1. However, the award of sanctions by the circuit court was not based solely on the motion to recuse, but on "the language in the referenced pleadings." The referenced pleadings included not only the motion to recuse but also the motion to vacate the rule to show cause (motion to vacate) and the amended reply in support of the motion to vacate the rule to show cause (amended reply).

I do not find that the record supports an award of sanctions either for the motion to vacate or the amended reply (collectively the "vacation pleadings"). Therefore, in my view,

34

the circuit court abused its discretion in the order of August 26, 2005, by imposing sanctions on the Feld Attorneys based on the vacation pleadings. For similar reasons, I would also find that the circuit court abused its discretion in that order by revoking the pro hac vice admission of Barry S. Simon. Accordingly, I respectfully dissent from those portions of the majority opinion and would reverse the judgment of the circuit court and remand for further proceedings.

## I. CODE § 8.01-271.1 SANCTIONS

PETA's supplemental motion for sanctions specifically requested sanctions under Code § 8.01-271.1 with regard to the motion to vacate. At the August 18, 2005 hearing on that motion and the July 1, 2005 rule to show cause, the circuit court was very specific as to the pleadings under consideration:

I don't think there's any question that we're only proceeding on civil sanctions at this point.

Also, on the documents that were listed in the rule to show cause we are proceeding [1] on Feld's motion to recuse and for evidentiary hearing, [2] on Feld's reply in support of motion to recuse and for evidentiary hearing, [3] on Feld's opposition to PETA's amended and supplemental motion for sanctions, [4] on Feld's motion to vacate the rule to show cause or in the alternative response to the rule, and

35

[5] on Feld's amended reply in support of the motion to vacate the rule to show cause. (Emphasis added.)

If that was not sufficiently clear, the court then reiterated what was to be considered at the hearing: "What we're going to have now are argument on the sanctions for filing those five pleadings," which included the vacation pleadings. Throughout the August 18, 2005 hearing, the circuit court consistently referred in the plural to all the pleadings that it had specifically listed as it considered the application of Code § 8.01-271.1 sanctions against the Feld Attorneys for "those pleadings."

At the conclusion of presentations from counsel at the hearing, the circuit court reiterated its consideration was of the "referenced pleadings," including the motion to recuse and the vacation pleadings. Further, the August 26, 2005 order grants PETA's supplemental motion for sanctions, and that supplemental motion for sanctions specifically referenced the motion to vacate. Thus, it is clear from the record that the award of sanctions in the order of August 26, 2005, was based, in part, on the vacation pleadings.

The majority opinion does not contend the vacation pleadings, by their actual language, violate any of the provisions of Code § 8.01-271.1. Indeed, the arguments in the

36

vacation pleadings go solely to the validity of the circuit court's contempt judgment against Joseph G. Petrosinelli, which is the subject of the companion case, <u>Petrosinelli v. People for the Ethical Treatment of Animals</u>, 273 Va. ___, ____ S.E.2d ___ (2007), which is also decided this day.  In that case, we agree with the arguments made in the motion to vacate, determine that the circuit court's finding of contempt was in error and reverse the judgment of the circuit court.  273 Va. at ___, ___ S.E.2d at ___.  There is simply no contention, either by PETA or the majority, that language used in the vacation pleadings is violative of Code § 8.01-271.1.

Nonetheless, the majority opinion assumes a legally sufficient nexus between the motion to recuse and the motion to vacate which warrants the consideration of the vacation pleadings as being part of the motion to recuse for sanctions purposes.  The majority opinion recites that "because the Feld attorneys made the motion to recuse part of their motion to vacate, the circuit court did not abuse its discretion in basing its award of sanctions in part on the motion to vacate."

A reading of the actual language used in the vacation pleadings does not support this conclusion.  The motion to recuse was neither incorporated nor made part of the motion to

37

vacate.  The only reference in the motion to vacate[11] to the motion to recuse is as follows:

It is undisputed that PETA submitted its Petition and supporting 42-paragraph affidavit to the Court ex parte.  It is also undisputed that the Court considered the ex parte communication and relied on it to issue the Rule.  See Rule at 1 ("And the Court having reviewed the petition and finding there is adequate cause to issue a Rule to Show Cause, and that an order of this Court was apparently violated . . . .") (emphasis added).

PETA's submission of this ex parte communication, and the Court's consideration of it, violated the Rules of the Supreme Court of Virginia.  See generally Motion to Recuse (April 8, 2005).

The motion to vacate says what it says.  It only references the motion to recuse with the term "[s]ee generally" and neither incorporates nor adopts any part of the motion to recuse into the motion to vacate.  The signal "see generally" means that the "[c]ited authority presents helpful background material related to the proposition."  The Bluebook: A Uniform System of Citation 47 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005).  It is not the equivalent of "incorporated."  There is simply no

---

[11] There is no reference to the motion to recuse of any nature whatsoever to be found in the amended reply.

nexus within the actual text of the pleadings at issue to substantiate that the motion to recuse is subsumed within the motion to vacate so as to vitiate the independent validity of the motion to vacate in the consideration of the propriety of the circuit court's award of sanctions.

In my view, the circuit court's judgment awarding sanctions under Code § 8.01-271.1 must be reviewed based upon the actual language of the vacation pleadings, which does not invoke the assertions of the motion to recuse. So viewed, there is simply no ground upon which the circuit court could award Code § 8.01-271.1 sanctions based on the vacation pleadings. This Court has recognized in earlier decisions that where there are multiple aspects of a party's pleadings, some of which are sanctionable and others of which are not, the portion of the sanctions awarded in respect of non-sanctionable filings cannot stand. See Nedrich v. Jones, 245 Va. 465, 474-76, 429 S.E.2d 201, 206-07 (1993). Where an award of sanctions is based "in whole or in part" on a portion of the filings that is not sanctionable, the circuit court has erred. See Oxenham v. Johnson, 241 Va. 281, 289-90, 402 S.E.2d 1, 5-6 (1991) (abuse of discretion not to distinguish between sanctionable and non-sanctionable conduct in fixing the amount of a fee sanction award). However, in the present context there is no basis upon which the judgment granting sanctions against the Feld Attorneys can be severed or

apportioned on appeal between the motion to vacate and the motion to recuse.[12]  See, e.g., <u>Green v. Virginia State Bar</u>, 272 Va. 612, 618, 636 S.E.2d 412, 416 (2006) (vacating sanction imposed by the Virginia State Bar Disciplinary Board and remanding for further proceedings to determine a more appropriate sanction); <u>Barrett v. Virginia State Bar</u>, 272 Va. 260, 273, 634 S.E.2d 341, 348 (2006) (vacating sanction and remanding for further proceedings because not all behavior was sanctionable).

Accordingly, the judgment of August 26, 2005, imposing sanctions on the Feld Attorneys should be reversed and the case remanded to the circuit court for a determination, exclusive of the vacation pleadings, as to whether sanctions against the Feld Attorneys are warranted and, if so, in what amount.

## II.   REVOCATION OF PRO HAC VICE ADMISSION

For similar reasons, I would reverse the circuit court's judgment revoking the pro hac vice status of one of the Feld Attorneys, Barry S. Simon.  As with the sanctions determination under Code § 8.01-271.1, the circuit court based its decision to

---

[12] At the May 25, 2005 hearing, PETA requested sanctions in the amount of $40,000 "to enforce the sanctions, to draw up these briefs, these oversized briefs that we had to deal with, the emergency nature of it."  The circuit court considered PETA's request at the August 18, 2005 hearing and awarded sanctions in the amount of $40,000 "to compensate [PETA] to some extent for what they've had to expend on this issue."  Both the request by PETA and the award by the circuit court included the vacation pleadings as part of the consideration.

revoke the pro hac vice status of this attorney because "Mr. Simon was in charge [with respect to] the referenced filings." The circuit court further stated that "considering everything that has happened in this case, particularly these filings, Mr. Simon's admission pro hac vice is revoked."  "[T]he referenced filings" and "these filings" refer to the same pleadings under consideration for Code § 8.01-271.1 sanctions, which included the motion to vacate and the amended reply.  The circuit court, therefore, based its revocation of Simon's pro hac vice admission in part upon the vacation pleadings, in which neither Simon nor any of the other Feld attorneys committed any type of infraction.

Thus, in my view, the circuit court abused its discretion in revoking Simon's pro hac vice status by considering the vacation pleadings as a basis for revocation.  Thus, I would reverse the judgment of the circuit court and remand the case for further consideration, exclusive of the vacation pleadings, as to whether Simon's pro hac vice status should be revoked.

Accordingly, I respectfully dissent from the majority opinion to the extent set forth above.