PRESENT:  All the Justices

JOSEPH G. PETROSINELLI

OPINION BY
v. Record No. 061785          JUSTICE G. STEVEN AGEE
                                  April 20, 2007
PEOPLE FOR THE ETHICAL TREATMENT OF
ANIMALS, INC.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David T. Stitt, Judge

In this appeal, we consider the judgment of the Circuit Court of Fairfax County which found Joseph G. Petrosinelli in civil contempt and awarded monetary sanctions against him.  For the reasons set forth below, we will reverse the judgment of the circuit court.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

This appeal arises from litigation in two similar lawsuits brought by the People for the Ethical Treatment of Animals, Inc. ("PETA").  PETA initially filed a motion for judgment on May 30, 2002 against Kenneth Feld, Richard Froemming, Joel Kaplan, Charles Smith and three "John Doe" defendants, alleging statutory and common law conspiracy and misappropriation of trade secrets ("PETA I").  In response to Feld's demurrer, he was nonsuited on July 25, 2003.[1]

_____

[1] By the time of the nonsuit as to Feld, PETA I had materially changed because Froemming had died, Kaplan proceeded pro se, and Smith asserted any claims against him had been discharged in bankruptcy.

PETA filed a second motion for judgment on January 26, 2004, naming Feld and three "John Doe" parties as defendants, alleging that Feld, CEO of Feld Entertainment, Inc., parent company of Ringling Brothers and Barnum & Bailey Circus, Inc., conspired and wrongfully took trade secrets and documents from PETA in an effort to thwart PETA's animal protection work ("PETA II").  Throughout PETA II, Feld was represented by several attorneys, including Petrosinelli.

On February 27, 2004, Feld moved to consolidate PETA I and PETA II for trial and discovery, which motion the circuit court denied.[2]  In September 2004, Feld again moved to consolidate PETA I and PETA II, which the circuit court took under advisement.[3]

On December 2, 2004, PETA issued a subpoena to depose Steven Kendall, a resident of Pennsylvania, in PETA I.[4]  Kendall failed to appear at the scheduled deposition, but he made a written agreement with PETA to appear in Alexandria, Virginia at the office of PETA's counsel on February 11, 2005 at 10:00am for a deposition in PETA I.

---

[2] An order entered on April 16, 2004 by Judge Gaylord L. Finch, Jr. provided "the motion to consolidate the matter for trial and discovery is denied."

[3] Judge Dennis J. Smith issued an order on September 24, 2004, which provided that Feld's "Renewed Motion to Consolidate is taken under advisement."

[4] Steven Kendall was allegedly an undercover operative working on behalf of Feld Entertainment to infiltrate PETA and similar organizations.  Kendall authored a book that contained potentially damaging information about Feld and Feld Entertainment, Inc.

On December 9, 2004, at a hearing in response to Feld's renewed motion to consolidate which had been taken under advisement, the circuit court entered an order consolidating PETA I and PETA II for purposes of trial, but not for discovery.[5] During the December 9, 2004 hearing, Petrosinelli orally requested that although discovery would not be consolidated, the parties should be notified when discovery was occurring in either PETA I or PETA II, even though Feld was no longer a party in PETA I. The circuit court denied Petrosinelli's request but invited the parties to revisit the issue, stating that they "are welcome to raise these issues again, because I'll be a lot deeper into the discovery."

On December 29, 2004, Feld filed a motion for permission to access discovery in PETA I, which PETA opposed. At a January 21, 2005 hearing on the motion, Petrosinelli reiterated his request on behalf of Feld to have access to discovery in PETA I. The circuit court reaffirmed that PETA I and PETA II would be joined for trial but separated for purposes of discovery, stating

> this really is about the third iteration of a very similar motion, and that doesn't even include the hearing before Judge Smith where he took the matter under advisement. . . .

---

[5] Judge David T. Stitt issued the December 9, 2004 order and all subsequent orders in this case.

> I exercise my discretion by again refusing . . . to join [the two cases] for discovery, and the motion for access to discovery . . . is denied.[6]

On February 3, 2005, Feld issued a subpoena in PETA II to depose Steven Kendall, requesting that he appear at the office of Blankingship & Keith, P.C. in Fairfax, Virginia on February 11, 2005 at 10:00am. The subpoena was signed by William B. Porter, another attorney representing Feld, but at Petrosinelli's direction and with his knowledge of the PETA deposition of Kendall already scheduled in PETA I for the same date and time, at the office of PETA's counsel in Alexandria.

Kendall's attorney responded on February 8, 2005 by sending letters to PETA and Feld indicating that Kendall would make himself available for a single deposition.[7] PETA responded the next day by letter to Kendall's attorney accusing Feld and Kendall of "engaging in a conspiracy to obstruct justice" because of the deposition scheduling.

PETA immediately moved in the circuit court to quash Feld's subpoena of Kendall in PETA II. On February 9, 2005, the circuit court conducted an emergency hearing by telephone

---

[6] The circuit court issued an order on January 24, 2005, which stated that Feld's "Motion for Access is DENIED for the reasons stated from the bench."

[7] Identical letters were sent to Feld and PETA, which stated: "Inasmuch as the subject matter of both depositions will be the same, we will be available to sit for one deposition and will submit to questions posed by you and [opposing counsel]" (emphasis in original).

4

conference call on PETA's motion.  The circuit court quashed Feld's subpoena of Kendall in PETA II and instructed that the PETA deposition of Kendall in PETA I continue as scheduled.

PETA drafted an order to reflect the circuit court's ruling, but Feld objected to some of the proposed language. Specifically, Feld objected to language in the proposed order stating Feld's subpoena of Kendall was "a circumvention of prior rulings in this case" and that the "previously noticed deposition [on PETA I] shall proceed."  When the parties did not reach agreement, PETA forwarded the proposed order as drafted to the circuit court along with the comments submitted by Feld.  On February 15, 2005, the circuit court entered the order as originally drafted by PETA, including the language to which Feld objected.

On February 18, 2005 PETA filed an ex parte petition for a rule to show cause in PETA II as to why Porter and Petrosinelli should not be held in contempt for violating the circuit court's order of January 24, 2005 and similar orders dated April 16, 2004 and December 9, 2004.  The petition for the rule to show cause included an affidavit from PETA's counsel, Philip J. Hirschkop, detailing how Porter and Petrosinelli allegedly violated the referenced orders.

On March 14, 2005, the circuit court issued a rule to show cause in PETA II stating "that an order of this Court was

5

apparently violated." The rule directed Porter and Petrosinelli to "show cause why they should not be held in contempt for violating this Court's orders of January 21, 2005, April 16, 2004 and December 9, 2004."[8] On April 8, 2005, Feld filed a motion to vacate the rule to show cause, or, in the alternative, a response to the rule, with affidavits from Petrosinelli and Porter attached.

On May 25, 2005, the circuit court conducted a hearing on the rule to show cause and Feld's motion to vacate the rule to show cause.[9] Judge Stitt held Petrosinelli in contempt under the rule to show cause for issuing the Kendall subpoena. Although Judge Stitt discussed the April 16, 2004 and December 9, 2004 orders, he made specific reference to the January 24, 2005 order and stated:

> That is a clear order denying access to discovery and what was done with this subpoena to Kendall was precisely an attempt to access discovery in [PETA I]. There's no other way to fairly characterize it. That's what it was, just a blatant violation of that order.

---

[8] Although the rule to show cause recites an order dated January 21, 2005, the actual order was signed on January 24, 2005, which memorialized the court's ruling at the January 21, 2005 hearing denying Feld's motion for access to discovery. See also supra note 6.

[9] The circuit court also considered other motions, but those motions are the subject of a separate appeal brought by Feld in Williams & Connolly, LLP v. People for the Ethical Treatment of Animals, 273 Va. ___, ___ S.E.2d ___ (2007), which is also decided this day.

6

> And I do find there was contempt pursuant to Virginia Code Section 18.2-456(5).[10] This was disobedience by an officer of the court of an order of the court.

The rule to show cause against Porter was dismissed.[11]

On August 18, 2005, the circuit court conducted a further hearing and reaffirmed its May 25, 2005 ruling from the bench holding Petrosinelli in contempt,[12] and ordered him to pay sanctions of $11,305.00 to PETA, all of which were memorialized in an August 26, 2005 order.

Petrosinelli filed a notice of appeal with the Court of Appeals pursuant to Code § 19.2-318 regarding the civil contempt sanction. We certified Petrosinelli's appeal in the Court of Appeals for review pursuant to Code § 17.1-409(A) and (B).

---

[10] Code § 18.2-456(5) provides that "The courts and judges may issue attachments for contempt, and punish them summarily [for] [d]isobedience or resistance of an officer of the court, juror, witness or other person to any lawful process, judgment, decree or order of the court."

[11] Petrosinelli admitted that he asked Porter to issue the Kendall subpoena. The court noted that Porter was "a young attorney, a former law clerk to this court, [and] he's obviously not calling the shots in this case, and I appreciate Mr. Petrosinelli taking the responsibility for having told him to issue the subpoena." Petrosinelli responded to the circuit court's ruling with a motion for reconsideration of the finding of contempt, but the circuit court denied the motion.

[12] Judge Stitt confirmed at the August 18, 2005 hearing that the contempt proceeding against Petrosinelli was civil contempt: "if I were going to proceed with criminal sanctions . . . I would let everybody know and refer the matter to the Commonwealth's Attorney. I obviously haven't done that and so I don't think there's any question that we're only proceeding on civil sanctions at this point."

7

## II.  ANALYSIS

A court has discretion in the exercise of its contempt power.  Sapp v. Commonwealth, 263 Va. 415, 425, 559 S.E.2d 645, 650 (2002); see also Leisge v. Leisge, 224 Va. 303, 309-10, 296 S.E.2d 538, 541 (1982).  It "is within the discretion of the trial court" to conduct civil contempt proceedings, Arvin, Inc. v. Sony Corp. of America, 215 Va. 704, 706, 213 S.E.2d 753, 755 (1975), thus we review the exercise of a court's contempt power under an abuse of discretion standard.  Tonti v. Akbari, 262 Va. 681, 687, 553 S.E.2d 769, 772 (2001).

Because the "judicial contempt power is a potent weapon," Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967), our centuries-old jurisprudence has long provided that "contempt lies for disobedience of what is decreed, not for what may be decreed." Taliaferro v. Horde, 22 Va. (1 Rand.) 242, 247 (1822).  Additionally, "before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied."  Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977).  Thus, "there must be an express command or prohibition" which has been violated in order for a proceeding in contempt to lie.  French v. Pobst, 203 Va. 704, 710, 127 S.E.2d 137, 141 (1962).

The March 14, 2005 rule to show cause stated that Petrosinelli "apparently violated" the circuit court's prior orders of January 24, 2005, April 16, 2004 and December 9, 2004 (the "three orders") by issuing the Kendall subpoena. The August 26, 2005 order finding contempt simply stated, "Joseph G. Petrosinelli is adjudged in contempt" but did not identify which order or orders were found to be the source of the contempt.

At the May 25, 2005 hearing on the rule to show cause, the circuit court discussed the three orders but emphasized the January 24, 2005 order as a particular order Petrosinelli violated because that order was "a clear order denying access to discovery and what was done with this subpoena to Kendall was precisely an attempt to access discovery in [PETA I]. . . . That's what it was, just a blatant violation of that order." The court then concluded "that there was contempt pursuant to Virginia Code Section 18.2-456(5)." We therefore review the language of the three orders to determine whether the circuit court abused its discretion in adjudging Petrosinelli in contempt.

Each of the three orders is short, with the pertinent adjudication of the court stated in one sentence. The January 24, 2005 order provides only that Feld's "Motion to Access is DENIED for the reasons stated from the bench." The April 16, 2004 order states only that Feld's "Motion to consolidate the

matter for trial and discovery is denied."  The December 9, 2004 order states only that "Feld's Motion to Consolidate is granted as to trial, but denied as to discovery."

Petrosinelli contends, as he did in the circuit court, that he did not violate any of the three orders.  Petrosinelli argues that no order of the court barred a subpoena to depose Kendall in PETA II.  Because Kendall was a Pennsylvania resident, Petrosinelli avers that the distinct possibility existed in which Feld would be unable to depose Kendall at all if he failed to act when he did.  By issuing the subpoena in PETA II, Petrosinelli argues he was attempting in good faith to follow the court's orders while also preserving Feld's right to take the deposition of a key witness.  As Kendall would agree to sit for only one deposition, Petrosinelli contends Feld faced the likely result that a Pennsylvania court would protect Kendall from multiple depositions on essentially the same subject matter as represented by PETA I and PETA II.  If that occurred, Petrosinelli argues, PETA would have the benefit of Kendall's deposition in PETA I to use in PETA II, but Feld would have been foreclosed from that information.

Petrosinelli also contends that the circuit court inappropriately relied on a mere implication that he could not depose Kendall as its basis for holding him in contempt.  Petrosinelli insists that by issuing a separate subpoena

10

deposition to Kendall, he was in compliance with the circuit court's ruling that discovery be separate between PETA I and PETA II.

In response, PETA asserts that Petrosinelli was found in contempt because he "engineer[ed]" a consolidated deposition with Kendall for PETA I and PETA II in direct violation of the three orders. PETA insists that it is crucial to consider the context of the circuit court's third denial of consolidated discovery in the January 24, 2005 order, when examining whether Petrosinelli acted contemptuously. PETA avers that the three orders provided Petrosinelli with explicit notice of what was required of him, yet Petrosinelli willfully defied the orders and effectively attempted to consolidate discovery. Because the circuit court's January 24, 2005 order included language that the court had denied consolidated discovery "for the reasons stated from the bench," PETA contends this provided Petrosinelli with sufficient notice of what was required. Finally, PETA argues that even if Petrosinelli did not violate explicit orders of the circuit court, his "egregious misbehavior in obstructing the administration of justice by causing the Kendall deposition subpoena to be issued" at the same date and time but at a different location as the deposition for PETA I, constitutes contempt.

We agree with Petrosinelli. In reviewing the three orders, we do not find an express prohibition on the issuance of a subpoena to Kendall by Feld or any other party. The three orders did not expressly command or prohibit Petrosinelli from acting to depose a witness, and Petrosinelli issued the subpoena only in PETA II. The text of the three orders is devoid of any prohibition regarding the issuance of a subpoena to Kendall or any other person.

A court generally speaks through its written orders. McMillion v. Dryvit Sys., 262 Va. 463, 469, 552 S.E.2d 364, 367 (2001). We presume that the written orders accurately reflect what transpired during the court's proceedings. Waterfront Marine Constr. v. North End 49ers Sandbridge Bulkhead Groups, 251 Va. 417, 427 n.2, 468 S.E.2d 894, 900 n.2 (1996). While a court's contempt power encompasses written orders as well as "oral orders, commands and directions of the court," Robertson v. Commonwealth, 181 Va. 520, 537, 25 S.E.2d 352, 359 (1943), a duty that arises by implication cannot sustain a finding of contempt. See, e.g., Winn, 218 Va. at 10-11, 235 S.E.2d at 309. If there was any prohibition upon Petrosinelli against subpoenaing Kendall for a deposition in PETA II, such a duty was, at best, an implication from general remarks of the court made in prior hearings. Petrosinelli was never explicitly prohibited by a court order from issuing the Kendall subpoena.

12

Mere implication of a duty cannot form the basis of a contempt judgment.  Id.

Rather, the three orders, each of which denied joint discovery in PETA I and PETA II, "merely declare[d] the rights of the parties without an express command or prohibition." French, 203 Va. at 710, 127 S.E.2d at 141.  As we stated in French, "there must be an express command or prohibition" to support a finding of contempt.  Id.  No such express command or prohibition exists that prohibited Petrosinelli from issuing the subpoena to Kendall.

Thus, after a review of the three orders, we hold that the circuit court abused its discretion when it adjudged Petrosinelli in contempt of court.  Petrosinelli's subpoena to Kendall in PETA II was not a violation of any express order of the court and thus could not be an act of contempt as a matter of law.

### III. CONCLUSION

For the foregoing reasons, we will therefore reverse the judgment of the circuit court, which adjudged Petrosinelli in contempt, and we will vacate the award of sanctions against Petrosinelli individually in the amount of $11,305.00 and enter final judgment in favor of Petrosinelli.

Reversed and final judgment.