PRESENT: Kinser, C.J., Millette, Mims, McClanahan, JJ., and
Lacy, S.J.

MICHAEL R. SHEBELSKIE, ET AL.

                                    OPINION BY
v.  Record No. 130503      CHIEF JUSTICE CYNTHIA D. KINSER
                                  January 10, 2014
LARRY E. BROWN

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Michael R. Shebelskie and William H. Wright, Jr., both of
whom are licensed to practice law in the Commonwealth, appeal
the circuit court's judgment sanctioning them pursuant to Code
§ 8.01-271.1.  We conclude that Shebelskie did not violate Code
§ 8.01-271.1 because he neither signed the "Brief in Response to
Show Cause Order" (Show Cause Response Brief) nor made a motion
under the terms of that statute.  Likewise, we conclude that
Wright did not violate the statute because he could have formed,
after reasonable inquiry, the belief that the Show Cause
Response Brief and the arguments set forth therein were
warranted under existing law.  Thus, the circuit court abused
its discretion, and we will reverse its judgment.

I.    FACTS AND PROCEEDINGS

Shebelskie and Wright represented Betty G. Brown in a suit
filed in the Circuit Court of the City of Richmond by her ex-
husband Larry E. Brown, seeking partition and judicial sale of

real property located in the City of Richmond.[1]  After extensive litigation concerning the sale of the property, the circuit court confirmed the sale pursuant to a 2008 real estate purchase contract (the Contract).  Subsequently, the purchasers, intervening in the partition suit, filed a joint motion with Betty asking the circuit court to approve assignment of the Contract to Betty.  In an order dated April 26, 2011, the circuit court granted the motion and directed Betty to close on the purchase of the property no later than May 5, 2011.  Among other things, the April order stated: "[Betty] is to pay all costs and attorneys' fees incurred by [Larry] for this matter, including costs and expenses and fees for the April 25, 2011 and April 26, 2011 hearings, and an additional $12,500."[2]

The following day, Wright asked Larry's counsel the amount of attorney fees and costs incurred for the April 25 and April 26 hearings.  Larry's counsel responded that the total amount

---

[1] The parties were divorced pursuant to a "Final Judgment of Dissolution of Marriage" entered in the State of Florida.

[2] The hearings on April 25th and 26th concerned the joint motion to assign the Contract.

While the assignment of the Contract and sale of the real property were pending, Betty offered to relieve Larry of his obligation to make a monthly temporary alimony payment required by their final divorce judgment in the State of Florida.  The circuit court rejected the offer and instead ordered Betty to pay the sum of $12,500 to Larry.

was $3,815.50.[3]  Betty closed on the real property on May 5 in accordance with the terms of the April order but did not submit any payment to Larry at that time.

Following the closing on the real property, Wright suggested to Larry's counsel that the attorney fees and costs due under the April order, including the $12,500, be offset from money owed by Larry to Betty in connection with their divorce. Larry rejected the proposal, stating that he "prefer[red] compliance with the [April order]."  About two weeks later, in the absence of any payment from Betty, Larry filed a motion for the issuance of a rule to show cause as to why Betty should not be held in contempt for failure to pay the attorney fees, costs, and the $12,500 according to the April order.  On August 1, 2011, the circuit court issued a rule to show cause and ordered Betty to appear in court to explain why she should not be held in contempt.

In the Show Cause Response Brief signed by Wright, he argued, on behalf of Betty, that the April order was "not yet final, making it unclear that [Betty] ha[d] any current obligation to pay."  Citing Winn v. Winn, 218 Va. 8, 235 S.E.2d 307 (1977), Wright stated that contempt only lies for failing to comply with an order's definite terms and that the order must

---

[3] Larry claimed attorney fees and costs from the date of Betty's motion to assign the Contract, not just for the hearings on April 25 and April 26.

contain an express command rather than an implied one. According to Wright, the April order did not "set any deadline for payment and [said] nothing whatever about the manner in which the payment [was] to be made." Wright contended that Betty's proposal to offset the amounts due under the April order from sums Larry owed to her was simply a different manner of payment and was consistent with the April order. Moreover, Wright argued, the order failed to specify the total amount due.

At an August 25, 2011 hearing on the rule to show cause, Shebelskie argued, on behalf of Betty, that the April order specified neither a "particular date" by which Betty had to pay, nor "a dollar amount" due.[4] Shebelskie pointed out that Betty had discussed the amount and method of payment with Larry, making clear that she was not simply ignoring the April order. Shebelskie also contended that because the April order lacked specificity with respect to the date due and the amount owed, it was an interlocutory order for which there was no current obligation to pay. In conclusion, Shebelskie argued that for contempt to lie, "[t]he order must obviously be a present obligation that's clear and definite. Here, we don't have that

---

[4] Prior to the hearing on the rule to show cause, Betty paid Larry the $12,500 required by the April order, plus the $3,815.50 in attorney fees and costs claimed by Larry's counsel, and asked in a pleading signed by Wright that the circuit court declare the issue of contempt moot. At the hearing, the circuit court rejected Betty's request.

4

because we didn't have the attorney's fees amount quantified, a date certain to pay, nor was it a final judgment."

In response, the circuit court stated:

> The [c]ourt finds the argument that there is no requirement to comply with interlocutory orders . . . at best novel and interesting, at worst a possible violation of [Code §] 8.01-271. . . . [T]his [c]ourt has never heard the argument from any attorney that the fact an order is preliminary [means] there's no requirement to comply with it. I'm going to take this matter under [advisement] because there's a possible [Code §] 8.01-271 violation.

The following day, Shebelskie sent the circuit court a letter, citing authorities to "establish the good faith basis of [Betty's] position." In the letter, Shebelskie disavowed claiming "that no interlocutory order is enforceable by contempt." Instead, Shebelskie stated that the argument was that the April order was not enforceable by contempt because it failed to specify the amount owed and the date due and thus lacked "definite terms as to the duties." Absent these specifications, Shebelskie contended, the April order was "a general damages award that becomes due upon entry of a final order."

On November 7, 2011, the circuit court entered an order that exonerated Betty of contempt because she had paid Larry. The court found, however, that Betty's

5

> counsel violated [Code] § 8.01-271.1 by
> arguing in August 2011 – both in writing and
> orally – that [Betty] did not have to comply
> with the April 2011 [o]rder because it did
> not state payment had to be in cash, did not
> set a date or deadline for payment, and was
> an interlocutory order.

The court concluded that the reasons asserted by Wright and Shebelskie as to why Betty should not be held in contempt were "neither well grounded in fact, nor warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, in violation of [Code] § 8.01-271.1." The court ordered that "Defendant's counsel" pay Larry's costs and attorney fees associated with compliance with the April order, as well as those incurred in the contempt proceedings.

Shebelskie and Wright, now represented by counsel, filed a motion asking the circuit court to reconsider its finding that they had violated Code § 8.01-271.1. Concerned that the court had misunderstood the argument they had made on behalf of Betty, Shebelskie and Wright stressed that their argument was not that Betty did not have to comply with the April order, but rather that she could not be held in contempt because the April order did not specify both an amount due and a payment date. Shebelskie and Wright also pointed out that the court's November order failed to identify the attorneys and the pleadings that formed the basis of the court's finding of a Code § 8.01-271.1 violation. They asserted that because the November order held

"Defendant's counsel" in violation of Code § 8.01-271.1, it improperly included non-signatory attorneys listed on pleadings and attorneys who appeared on behalf of Betty but made no oral motions.

The circuit court denied the motion for rehearing in an order dated November 28, 2011.[5] In November 2012, the circuit court held a hearing to address both the amount of sanction to be imposed and the contention that it was unclear which attorney was the subject of the sanction. Shebelskie and Wright argued that Wright alone signed a pleading that fell within Code § 8.01-271.1. They also asserted that neither attorney made an oral motion but, instead, only presented oral arguments in response to the show cause order.

In a final order entered on December 12, 2012, the circuit court held that the sanction was imposed against both Shebelskie and Wright. "These two attorneys," the court stated, "argued, both in [the] Brief in Response to . . . Show Cause Order and at the August 25, 2011 hearing, that [Betty] did not have to comply with the [c]ourt's April 26, 2011 [o]rder for a number of reasons." Pursuant to Code § 8.01-271.1, the court imposed sanctions in the amount of $12,605.33, the sum requested by

_____

[5] The circuit court withheld imposition of sanctions pending an appeal to this Court. Because there was no final, appealable order, this Court dismissed the appeal without prejudice.

7

Larry as the attorney fees and costs "associated with compliance with the April 26, 2011 [o]rder."

We granted this appeal. Shebelskie and Wright assert that the circuit court erred by finding that they violated Code § 8.01-271.1: (1) because Shebelskie was a "non-signatory attorney who only presented oral argument"; (2) because the court based its decision on arguments they did not make; and (3) because their actual arguments on behalf of Betty were warranted by existing law concerning contempt.

## II. ANALYSIS

The relevant provisions of Code § 8.01-271.1 state that "every pleading, written motion, and other paper" signed, as well as every "oral motion made" by an attorney, "constitutes a certificate" or "representation," respectively, that: (1) "to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"; and (2) "it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." In addition, as to every "pleading, motion, or other paper," the attorney's signature certifies that "he has read the pleading, motion, or other paper." Id. If any "pleading, motion, or other paper is signed or made in violation

8

of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion . . . an appropriate sanction." Id.

In reviewing a trial court's decision to impose a sanction pursuant to the Code § 8.01-271.1, we apply an abuse of discretion standard. Gilmore v. Finn, 259 Va. 448, 466, 527 S.E.2d 426, 435 (2000). Reviewing for an abuse of discretion does not simply mean that a circuit court "may do whatever pleases it." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (internal quotation marks omitted). Rather, "when a decision is discretionary . . . . 'the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Lawlor v. Commonwealth, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (quoting Landrum, 282 Va. at 352, 717 S.E.2d at 137).

There are

> "three principal ways" by which a court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

9

Id. at 213, 738 S.E.2d at 861 (quoting Landrum, 282 Va. at 352, 717 S.E.2d at 137). When the law "circumscribes the range of choice available to a court in the exercise of its discretion[,] [t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Id. (internal quotation marks omitted). "Such an error may occur when the court believes it lacks authority it possesses, . . . when it believes the law requires something it does not, . . . or when it fails to fulfill a condition precedent that the law requires." Id. (citations omitted).

In applying the abuse of discretion standard when reviewing a sanction imposed under Code § 8.01-271.1, we employ "an objective standard of reasonableness" to determine whether an attorney, "after reasonable inquiry, could have formed a reasonable belief that the pleading was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Gilmore, 259 Va. at 466, 527 S.E.2d at 435; accord Nedrich v. Jones, 245 Va. 465, 471-72, 429 S.E.2d 201, 204 (1993). While the possibility of sanctions can "protect litigants" from "unfounded factual and legal claims and against the assertions of valid claims for improper purposes[,]" the threat of a sanction should not be used to stifle counsel in advancing novel legal theories or asserting a client's rights in a doubtful case." Gilmore, 259 Va. at 466, 527 S.E.2d at 435.

10

Although the circuit court concluded that both Shebelskie and Wright violated Code § 8.01-271.1 and held them jointly and severally liable for the monetary sanction imposed, we will address each attorney separately, beginning with Shebelskie.

### A.    Sanction against Shebelskie

Shebelskie claims that he neither signed a pleading nor made a motion such that he could be sanctioned under Code § 8.01-271.1.  As Larry concedes, the Show Cause Response Brief was signed by Wright alone and so cannot serve as a basis for sanctioning Shebelskie.  With respect to the only other conduct identified by the circuit court as being the subject of the sanction, Shebelskie's oral argument at the August 2011 hearing, that argument was not an "oral motion" under Code § 8.01-271.1.

Absent ambiguity or an absurd result, ordinary principles of statutory construction require us to construe the term "motion" according to its plain meaning.  See Nolte v. MT Tech. Enters., LLC, 284 Va. 80, 89-90, 726 S.E.2d 339, 344 (2012).  A "motion" is a "written or oral application requesting a court to make a specified ruling or order."  Black's Law Dictionary 1106 (9th ed. 2009).

At the August 2011 hearing, Shebelskie presented argument as to why Betty should not be held in contempt.  That argument, however, was in response to Larry's motion for the issuance of a rule to show cause and the circuit court's issuance of the rule.

11

At the time of the hearing, Shebelskie had neither filed nor made orally any motion under consideration by the court. To hold that Shebelskie's argument was nevertheless an "oral motion" under Code § 8.01-271.1 would extend the word "motion" beyond its plain meaning and would mean that any oral argument is a "motion" under the statute. The General Assembly chose the word "motion" intentionally, and we will not construe the term beyond its intended meaning to encompass an argument made in response to an opposing party's motion.[6] See Kummer v. Donak, 282 Va. 301, 304, 715 S.E.2d 7, 9 (2011) ("This Court assumes the legislature chose [its] words with care and is bound by those words in construing the statute."). Thus, the circuit court was "influenced by [a] mistake of law" and therefore abused its discretion by imposing a sanction against Shebelskie under Code § 8.01-271.1. Lawlor, 285 Va. at 213, 738 S.E.2d at 861 (internal quotation marks omitted).

### B. Sanction against Wright

---

[6] On brief and in oral argument, Larry acknowledged that Shebelskie's oral argument before the court at the August 2011 hearing did not constitute a "motion" under Code § 8.01-271.1. Instead, Larry contends that the circuit court sanctioned Shebelskie for the post-hearing letter to the circuit court that he signed. That letter, however, was not the basis for the court's decision to sanction Shebelskie. In its final order, the circuit court specifically identified the Show Cause Response Brief and the oral argument at the August hearing as the bases for the imposition of sanctions. We will thus not address whether the post-hearing letter qualifies as a "pleading" or "other paper" under Code § 8.01-271.1.

In light of our holding with regard to Shebelskie and the fact that Wright also did not make any motions at the August 2011 hearing, our analysis now is limited to the question whether the circuit court erred in finding that Wright violated Code § 8.01-271.1 by presenting the arguments set forth in the Show Cause Response Brief.

The circuit court concluded that Wright violated the statute by arguing in that written submission that Betty "did not have to comply with the April 2011 Order because it did not state payment had to be in cash, did not set a date or deadline for payment, and was an interlocutory order." At the August hearing, the court again characterized Wright's argument as being "that there is no requirement to comply with interlocutory orders or preliminary orders." In its November 2011 order, the circuit court stated that Wright argued that the April 2011 order was interlocutory and Betty "did not have to comply with it because it could not be appealed." The court also stated: "The [c]ourt has not yet received any legal authority supporting the position that parties do not have to comply with court orders [if they] are interlocutory, or do not state payment had to be in cash, or do not set a date or deadline for payment."

These findings misstate Wright's argument. Wright never contended that Betty did not have to comply with the April order

13

because it was interlocutory.[7]  Wright also never argued that an

order lacking an amount to be paid, a deadline for payment, or a

manner of payment did not have to be obeyed.  Rather, Wright

argued that an order lacking such specificity could not be the

basis of a contempt finding.  In the Show Cause Response Brief,

Wright argued the following:

> It is hornbook law that contempt lies only
> for failure to abide by an order's "definite
> terms as to the duties thereby imposed . . .
> and the command must be expressed rather
> than implied."  Winn v. Winn, 218 Va. 8, 10,
> 235 S.E.2d 307, 309 (1977)[.]  Since no
> definite term of the [April o]rder requires
> [Betty] to have paid in cash on demand by
> [Larry], [Betty] has not violated any
> definite term of the [April o]rder.
>
> . . . .
>
> The [April o]rder does not confer on
> [Larry] any right to unilaterally fix the
> form and time of payment.  It does not
> address these subjects at all.  Since the
> interlocutory [April o]rder sets no deadline
> and specifies no method of payment, under
> the rule of Winn, [Betty] cannot be in
> contempt simply because she has offered
> payment, before the [April o]rder is even
> final, by an alternative method of payment
> that reduces [Larry's] debt to her.

---

[7] In fact, neither Wright nor Shebelskie made that argument
or an argument that Betty could not be held in contempt because
the April order was interlocutory.  In response to the circuit
court's perceived mischaracterization of the argument,
Shebelskie, in his post-hearing letter to the circuit court,
expressly acknowledged that many interlocutory orders could
indeed be enforced by contempt.

Because the April order was an interlocutory order that did not contain express terms with regard to the total amount due, the date payment was to be made, and the manner of payment, Wright argued, it lacked the specificity required to be enforced by contempt.[8]

Under well-established Virginia jurisprudence, contempt only lies "'for disobedience of what is decreed, not for what may be decreed.'" Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706-07, 643 S.E.2d 151, 154 (2007) (quoting Taliaferro v. Horde, 22 Va. (1 Rand.) 242, 247 (1822)). "'[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Id. at 707, 643 S.E.2d at 151 (quoting Winn, 218 Va. at 10, 235 S.E.2d at 309). "[F]or a proceeding in contempt to lie," there "'must be an express command or prohibition' which has been violated." Id. (quoting French v. Pobst, 203 Va. 704, 710, 127 S.E.2d 137, 141 (1962)). These principles arise from the recognition that the "'judicial contempt power is a potent weapon.'" Id. at 706, 643 S.E.2d at

---

[8] At the August hearing and in the post-hearing letter, Shebelskie likewise argued that "established law . . . proscribes a finding of contempt unless an order has definite terms as to the duties."

15

154 (quoting International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967)).

In Winn, the parties entered into a marital settlement agreement in which the husband agreed to maintain for two years an existing health insurance policy covering his wife, or a similar policy containing comparable benefits. 218 Va. at 9, 235 S.E.2d at 308. After the entry of the divorce decree that incorporated the agreement, the husband maintained the existing policy, but the insurer refused to cover the wife's medical expenses because her divorce "had become final." Id. (internal quotation marks omitted). She thus sought to hold the husband in contempt for failing to comply with the terms of the divorce decree. Id. The trial court agreed with the wife and held the husband in contempt. Id.

On appeal, this Court reversed the trial court's judgment. Id. at 10-11, 235 S.E.2d at 309. We concluded that the husband had not violated "a clearly defined duty imposed upon him by the agreement and the decree" and thus was not in contempt. Id. We explained:

> It may well be that [the parties] intended the husband's obligation to be absolute – if intervention of the divorce should have the effect of voiding the wife's coverage under the [existing] policy, it was his duty to procure other insurance guaranteeing her substantially the same benefits she had as his undivorced wife. But if this was the husband's duty, it was not expressed in

16

> definite terms in the agreement, as
> incorporated into the divorce decree. If
> the duty existed at all, it arose only by
> implication.

Id.

Similarly, in Petrosinelli, the Court held that an attorney was not in contempt because the orders at issue did not contain an "express command or prohibition." 273 Va. at 709, 643 S.E.2d at 156 (internal quotation marks omitted). There, the trial court consolidated two cases for trial, but in three separate orders denied motions by a defendant in the second action to consolidate the cases for discovery. Id. at 703, 643 S.E.2d at 153. With knowledge that the plaintiff had scheduled the deposition of a particular witness in the first action, the defendant's attorney issued a subpoena to depose that witness in the second action on the same date and time but at a different location. Id. In response, the plaintiff filed a petition for a rule to show cause in the second action as to why the defendant's attorney should not be held in contempt for violating the court's orders denying consolidation of the two cases for discovery. Id. at 705, 643 S.E.2d at 153. Finding that the attorney had violated at least one of its orders, the trial court held the attorney in contempt. Id. at 705-06, 643 S.E.2d at 154.

17

On appeal, this Court concluded that the three orders denying consolidation of the two cases for discovery did not contain "an express prohibition on the issuance of a subpoena to [the witness] by [the defendant] or any other party."  Id. at 708, 643 S.E.2d at 156.  We further concluded that the orders "did not expressly command or prohibit [the attorney] from acting to depose a witness" and the attorney issued the subpoena in only the second action.  Id.  Continuing, we explained that

> a duty that arises by implication cannot sustain a finding of contempt.  If there was any prohibition upon [the attorney] against subpoenaing [the witness], such a duty was, at best, an implication from general remarks of the court . . . .  [The attorney] was never explicitly prohibited by a court order from issuing the . . . subpoena.  Mere implication of a duty cannot form the basis of a contempt judgment.

Id. at 709, 643 S.E.2d at 156 (citation omitted).  Thus, this Court reversed the trial court's judgment.  Id.

In the case now before us, the April order imposed several express duties with regard to the closing on the sale of the real property.  The order also directed Betty to pay the attorney fees and costs associated with her motion to approve the assignment of the Contract to her, including those incurred for two prior hearings on the matter.  But the April order did "not express[] in definite terms," Winn, 218 Va. at 10, 235 S.E.2d at 309, the total amount to be paid by Betty and

18

"express[ly] command[ed]" only that Betty pay Larry "an additional $12,500." Petrosinelli, 273 Va. at 707, 643 S.E.2d at 155 (internal quotation marks omitted). The order also failed to specify when Betty was to pay the undetermined amount, and the order was not final.

Irrespective of whether Wright was actually correct that his client's obligation to pay a certain amount by a specific date "ar[ose] by implication" and thus could not "sustain a finding of contempt," Petrosinelli, 273 Va. at 709, 643 S.E.2d at 156, we conclude that Wright "after reasonable inquiry, could have formed a reasonable belief" that the arguments set forth in the Show Cause Response Brief were "warranted by existing law" governing contempt.[9] Gilmore, 259 Va. at 466, 537 S.E.2d at 435-36; see also Winn, 218 Va. at 10, 235 S.E.2d at 309 ("If the duty existed at all, it arose only by implication."); Petrosinelli, 273 Va. at 707, 643 S.E.2d at 154 ("[T]here must be an express command or prohibition which has been violated" for contempt to lie) (internal quotation marks omitted). By misconstruing Wright's argument, the circuit court considered

---

[9] In arguing that Wright knew what the April order required, Larry raises several factual and circumstantial issues not stated in the order itself. It is the violation of a court's order, however, that is the proper subject of contempt, not implications arising from other circumstances of the case. See Petrosinelli, 273 Va. at 709, 643 S.E.2d at 156 (stating that a court's contempt power encompasses the written and oral "orders, commands and directions of the court") (internal quotation marks omitted).

19

"an irrelevant or improper factor" and arrived at the "erroneous legal conclusion[]" that Wright's arguments were not warranted by existing law.  Landrum, 282 Va. at 352, 717 S.E.2d at 137; Lawlor, 285 Va. at 213, 738 S.E.2d at 861.  Thus, the court abused its discretion by holding that Wright violated Code § 8.01-271.1.

### III. CONCLUSION

In sum, the circuit court abused its discretion by imposing sanctions on Shebelskie and Wright pursuant to Code § 8.01-271.1.  We will reverse the circuit court's judgment and dismiss the rule to show cause.

Reversed and dismissed.