# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on* Friday *the* 31st *day of* October, 2014.

DRHI, Inc.,          Appellant,

  against        Record Nos. 131974 and 140605
                Circuit Court No. CL-2012-17631

William W. Hanback, Jr.,          Appellee.

                                    Upon appeals from a
judgment rendered by the Circuit
Court of Fairfax County.

Upon consideration of the record, briefs, and argument of counsel, the Court is of the opinion that there is error in the judgment of the circuit court.

On August 28, 2000, DRHI, Inc. ("DRHI") entered into a contract to purchase a parcel of land from William W. Hanback, Jr. ("Hanback"). On June 5, 2002, DRHI filed a complaint in the circuit court against Hanback for specific performance of the land purchase contract. DRHI alleged, upon information and belief, that Hanback had received a better offer from a third party and was now refusing to confirm in writing that he would honor his contractual obligations and sell the property to DRHI.

Hanback filed an answer and grounds of defense in which he admitted entering into the land purchase contract, but he argued that DRHI failed to perform certain terms of the contract and asserted that the contract was therefore void. On June 9, 2004, the trial court entered a decree which provided, in relevant part, that:

> Mr. Hanback shall appear at settlement on or
> before June 9th at a time and place selected by
> DRHI, Inc. [A]t the time of settlement, DRHI,
> Inc. shall pay to Mr. Hanback $400,000 minus
> the $10,000 already paid, and . . . at the time
> any subdivision plans submitted by DRHI, Inc.
> for the development of the property sold by Mr.
> Hanback are approved by the City of Fairfax, in
> the event that the plans submitted by DRHI,
> Inc. permit the construction of six or more
> individual residences, DRHI, Inc. shall pay to
> Mr. Hanback $70,000 for the sixth lot and
> $70,000 for each additional approved lot.

More than eight years later, on November 21, 2012, Hanback filed a petition for rule to show cause.[1] In his petition, Hanback asserted that after closing on his property in 2004, DRHI purchased an adjoining property and designed an integrated development plan combining the two parcels. The integrated planned development was approved by the City of Fairfax on May 22, 2007, permitting 15 homes to be constructed between the two parcels. Under the plan, Hanback's former property contained 5.5 lots and a one acre "buffer zone," and the adjoining parcel contained 9.5 lots. The site plan for the properties was approved in 2010 by the City of Fairfax, and construction of the homes began in 2012.

Hanback asserted in his petition, that once he became aware that 15 homes were being constructed on the two parcels, he contacted DRHI and requested the additional funds that were owed to him under the 2004 order. Hanback attached a letter from DRHI to

---

[1] Hanback did not file an independent action. He filed his petition for rule to show cause in the previously filed civil action. The petition for rule to show cause contains the same record number as the underlying civil action.

2

his petition in which DRHI asserted that it had paid Hanback in accordance with the contract based upon conditions existing at the time of closing, and was under no obligation to pay him additional sums.

In his petition, Hanback argued that the one acre buffer zone assigned to his former property allowed for 10 additional homes to be constructed on the adjoining parcel, and demanded $70,000 for each additional lot (over the five for which he had already been paid) attributable to his property. He claimed that DRHI violated the June 9, 2004 order by refusing to pay and asked the trial court to issue the rule to show cause and hold DRHI in contempt of court.

The following proceedings then took place:

- On May 9, 2013, the circuit court held an evidentiary hearing on the petition for rule to show cause. The circuit court issued a letter opinion on July 16, 2013, in which it held the following:

  > Mr. Hanback's Verified Petition for Rule to Show Cause is hereby granted. DRHI is in contempt of the June 9, 2004 Decree of this Court. DRHI is directed to appear on Friday, January 17, 2014, at 10:00 a.m. to show cause why it is not in contempt of the Decree. DRHI may purge itself of this contempt finding by paying to Mr. Hanback the $350,000 additional compensation owed under the terms of the Decree on or before the January 17, 2014 review date.

- On August 8, 2013, the circuit court held a hearing, during which the parties agreed to move up the date of the show cause hearing.

3

- On August 9, 2013, the circuit court issued a rule to show cause to DRHI which stated:

  > You are hereby ordered to appear before this Court on the 16th day of September 2013 at 8:30 a.m., or as soon thereafter as this matter may be heard, and show cause, if any you can, why you should not be held in contempt of Court, and fined, imprisoned or both for any such contempt, for your failure to comply with the provisions of the Order entered on June 9, 2004. Prior to that appearance, you may purge the contempt by paying $350,000.00, plus any applicable interest, to counsel for Hanback.

- On September 20, 2013, after determining that DRHI had not paid the $350,000, the circuit court entered an order finding DRHI in contempt of the June 9, 2004 order. The order stated "[t]hat a judgment shall be, and hereby is, entered for Hanback against DRHI in the amount of $350,000, which represents the outstanding amount owed under the June 9, 2004 decree."

DRHI filed a notice of appeal to both the Court of Appeals of Virginia and to this Court. Prior to filing a petition for appeal in this Court, DRHI filed a motion for relief from collection proceeding in the Court of Appeals and this Court. On December 18, 2013, this Court declined the motion, finding that the motion arose out of a judgment of contempt, the appeal of which was pending in the Court of Appeals, and that the Court therefore lacked jurisdiction over the motion.

On the same day this Court issued its order, DRHI filed its petition for appeal in this Court. The appeal contained the following assignments of error:

4

1. The lower court erred when it entered a $350,000 judgment in favor of Appellee Hanback because it did not have the jurisdiction to award a monetary judgment.

2. The lower court erred when it entered a $350,000 judgment in response to Appellee Hanback's request for the issuance of a rule to show cause. The court did not have the authority by way of its contempt powers to award this judgment.

3. If, arguendo, the lower court had the jurisdiction and authority to entertain Appellee Hanback's demand for entry of a monetary judgment, it erred when it considered irrelevant evidence to come to this award.

4. The lower court erred when it entered a $350,000 judgment in favor of Appellee Hanback because the evidence it considered to come to this award establishes that no sum is due.

DRHI's petition for appeal to the Court of Appeals contained the following assignments of error:

1. The lower court erred when in August 2013 it issued a rule to show cause against DRHI, Inc. and thereafter found it in contempt for its failure to pay a sum allegedly due from a 2001 real estate contract which closed in 2004.

2. The lower court erred when it issued a rule and found DRHI in contempt because these actions came as a result of its redrafting of the 2004 decree.

3. The lower court erred when it issued a rule and found DRHI in contempt because these actions came as a result of the court's redrafting of a 2001 contract which the 2004 decree ordered be specifically enforced.

4. The lower court erred when it found DRHI in contempt because Hanback's evidence did not show a violation of the terms of the decree.

5. The lower court erred when it found DRHI in contempt because DRHI's failure to pay was justified.

5

6.   The lower court erred when it found DRHI in contempt because it relied upon irrelevant evidence to come to this finding.

7.   The lower court erred when it allowed Hanback to relitigate the 2002 bill of complaint and awarded relief not requested in that litigation.

## Jurisdiction

As evidenced by the assignments of error in the two petitions for appeal, one of the central questions posed in the appeals is whether the trial court's order that DRHI pay Hanback $350,000 constituted a monetary judgment, a civil contempt fine, or both. This Court has jurisdiction over appeals from money judgments in civil cases pursuant to Code § 8.01-670(A)(3). Because it was not immediately apparent from the petitions for appeal whether this case involved a monetary judgment, a civil contempt fine, or both, this Court determined that in the interests of judicial economy it should grant DRHI's petition for appeal to this Court (Record No. 131974), and certify the case before the Court of Appeals (Record No. 140605) pursuant to Code §§ 17.1-409(A) and -409(B)(2).

In the interests of judicial economy, we have certified the appeal of contempt convictions from the Court of Appeals in other situations. In Nusbaum v. Berlin, 273 Va. 385, 641 S.E.2d 494 (2007), the appellant had appealed an award of monetary sanctions to this Court and a criminal contempt conviction and fine to the Court of Appeals. We awarded Nusbaum an appeal on the monetary sanctions and certified the criminal contempt appeal from the Court of Appeals pursuant to Code §§ 17.1-409(A) and -409(B)(2). Id. at 390, 641 S.E.2d at 496.

In <u>Petrosinelli v. PETA</u>, 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007), we certified an appeal of a civil contempt finding and compensatory fine. Petrosinelli, the appellant, did not have a separate appeal pending in this Court. However, other members of Petrosinelli's law firm had filed an appeal of monetary sanctions in this Court. <u>Williams & Connolly v. PETA,</u> 273 Va. 498, 643 S.E.2d 136 (2007). The monetary sanctions and the civil contempt arose out of the same underlying litigation and, therefore in the interests of judicial economy, we certified Petrosinelli's appeal and decided both cases.

The dissent contends that we should not have certified the appeal from the Court of Appeals in this case because there is no separate monetary sanction for misconduct, or any other issue over which this Court has jurisdiction under Code § 8.01-670, and therefore no second issue with which the contempt challenge could be intertwined or upon which it could depend. However, in <u>Petrosinelli</u> there was no separate monetary sanction or second issue either. The only issue in <u>Petrosinelli</u> was whether the trial court erred in holding Petrosinelli in civil contempt and ordering him to pay a compensatory fine of $11,305 to PETA. 273 Va. at 706, 643 S.E.2d at 154. There were, however, monetary sanctions in a separate appeal brought by separate appellants, involving the same underlying litigation, and we deemed that it would be expeditious to hear and decide both appeals together. But our power to certify Petrosinelli's appeal from the Court of Appeals was not dependent upon having a second appeal pending in this Court over which we had independent jurisdiction.

The power to certify an appeal from the Court of Appeals lies within the discretion of this Court. When we determine that it is appropriate to exercise that discretion, which we rarely do, we are not required to make specific findings about the docket or status of work in the Court of Appeals, as the dissent implies. In this case, we determined that both appeals arose from the same underlying facts, and a decision in one appeal could very well have an impact on the other appeal. Accordingly, we certified the appeal from the Court of Appeals pursuant to Code §§ 17.1-409(A) and -409(B)(2). The effect of such certification transfers jurisdiction to this Court over the entire case, regardless of the outcome on the merits.

Civil Contempt

We review the exercise of a trial court's civil contempt power under an abuse of discretion standard. Petrosinelli, 273 Va. at 706, 643 S.E.2d at 154; see also Tonti v. Akbari, 262 Va. 681, 687, 553 S.E.2d 769, 772 (2001).

We hold that the trial court's September 20, 3013 order is a judgment of civil contempt which awarded Hanback a compensatory fine in the amount of $350,000. We must now determine whether the trial court abused its discretion when it held DRHI in contempt and awarded the compensatory fine to Hanback.

The June 9, 2004 order required Hanback to appear at settlement, and ordered DRHI to pay Hanback $400,000, minus the $10,000 already paid. However, the order also decreed "that at the time any subdivision plans submitted by DRHI, Inc. for the development of the property sold by Mr. Hanback are approved by the City of Fairfax, in the event that the plans submitted by DRHI,

8

Inc. permit the construction of six or more individual residences, DRHI, Inc. shall pay to Mr. Hanback $70,000.00 for the sixth lot and $70,000 for each additional approved lot thereafter." This June 9, 2004 order was not an enforceable judgment in favor of Hanback, and no finite amount of damages was identified.[2] The additional amount DRHI might owe to Hanback was left open and was dependent on numerous factors which had not occurred as of June 9, 2004.

Under well-established Virginia jurisprudence, contempt only lies "'for disobedience of what is decreed, not for what may be decreed.'" Petrosinelli, 273 Va. at 706-07, 643 S.E.2d at 154 (citation omitted). "'[B]efore a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Id. at 707, 643 S.E.2d at 154 (quoting Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977). "'[F]or a proceeding in contempt to lie,'" there "'must be an express command or prohibition' which has been violated." Id. (quoting French v. Pobst, 203 Va. 704, 710, 127 S.E.2d 137, 141 (1962)). These principles arise from the recognition that the "'judicial contempt power is a potent weapon.'" Id. at 706, 643 S.E.2d at 154 (quoting International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967)). See also Shebelskie v. Brown, 287 Va. 18, 30, 752 S.E.2d 877, 884 (2014)(same).

---

[2] In this order we do not reach the question whether contempt proceedings are an appropriate process for enforcing civil monetary judgments outside the realm of domestic relations cases.

9

In June 2004, when the circuit court entered its order, DRHI had not yet received approval from the City of Fairfax regarding any subdivision plans for the development of Hanback's property. The June 9, 2004 order left unresolved any issues surrounding DRHI's future failure to pay and any consequent damages. Because the June 9, 2004 order did not contain definite terms as to the total amount DRHI was required to pay and when such payment was due, DRHI could not be held in contempt for failing comply with the June 9, 2004 order.

Accordingly, the circuit court abused its discretion by holding DRHI in contempt for violating the June 9, 2004 order and by ordering DRHI to pay Hanback the amount of $350,000. We reverse the circuit court's judgment in the case certified from the Court of Appeals and dismiss the rule to show cause. Our decision moots the controversy in the direct appeal and that case is dismissed.

This order shall be certified to the Circuit Court of Fairfax County and shall be published in the Virginia Reports.

_____

JUSTICE MIMS, with whom JUSTICE McCLANAHAN and JUSTICE POWELL join, dissenting.

While the majority's conclusion that the circuit court abused its discretion may be correct, the Court has no subject matter jurisdiction to reach it. Therefore, I must respectfully dissent.

The majority correctly concludes that these appeals arise from a judgment for civil contempt. Code § 19.2-318 vests subject matter jurisdiction over such judgments in the Court of Appeals. The majority nevertheless reaches the merits, asserting that the

10

nature of the judgment was not clear when we granted the petition for appeal in Record Number 131974 and certified Record Number 140605 from the Court of Appeals. The majority also asserts that the certification and ultimate disposition are in the interests of judicial economy. These assertions are well-founded, yet cannot create subject matter jurisdiction over these appeals.

"[S]ubject matter jurisdiction . . . is the authority granted through constitution or statute to adjudicate a class of cases or controversies . . . ." Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990). "While a court always has jurisdiction to determine whether it has subject matter jurisdiction, a judgment on the merits made without subject matter jurisdiction is null and void." Id. at 170, 387 S.E.2d 755-56.

Through Code § 19.2-318, the General Assembly vests subject matter jurisdiction over appeals from circuit courts' judgments for civil contempt in the Court of Appeals.[3] Although the General Assembly vests subject matter jurisdiction over judgments of the Court of Appeals in this Court through Code § 17.1-411 (except in cases where the judgment of the Court of Appeals is final), our jurisdiction in civil contempt cases is derivative. We do not have subject matter jurisdiction to review a circuit court's judgment for civil contempt by operation of these two statutes; rather, in such cases we have subject matter jurisdiction only to review the judgment rendered by the Court of Appeals.

---

[3] Code § 16.1-69.24 provides for appeals of district courts' judgments for civil contempt.

11

Accordingly, once the majority concluded that the judgment appealed from was a judgment for civil contempt, the Court's authority to review it in Record Number 131974 ended.

The majority finds an independent basis to review the circuit court's judgment in Record Number 140605 under the authority conferred by Code § 17.1-409. In that section, the General Assembly empowered us to certify "any case in which an appeal has been taken to or filed with the Court of Appeals." Code § 17.1-409(A) (emphasis added). "The effect of such certification shall be to transfer jurisdiction over the case to the Supreme Court for all purposes." Id.

Through Code § 17.1-409(A), the General Assembly effectively makes the subject matter jurisdiction of this Court coextensive with the subject matter jurisdiction of the Court of Appeals, enabling us to review any judgment that court may review. However, our subject matter jurisdiction is contingent. Code § 17.1-409(B). It is predicated upon the existence of either of two exigent circumstances. In the words of the statute, we may certify a case from the Court of Appeals

> only when, in its discretion, the Supreme Court determines that:
> 1. The case is of such imperative public importance as to justify the deviation from normal appellate practice and to require prompt decision in the Supreme Court; or
> 2. The docket or the status of the work of the Court of Appeals is such that the sound or expeditious administration of justice requires that jurisdiction over the case be transferred to the Supreme Court.

Id. (emphasis added).

12

While the statute commits this decision to our discretion, discretion does not "mean that the court may do whatever it pleases." Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (quoting Kern v. TXO Production Corp., 738 F.2d 968, 970 (8th Cir. 1984)) (alteration omitted). The General Assembly said "only," Code § 17.1-409(B), using "simple, clear and unambiguous language" and we must "'read it to mean what it says.'" Commonwealth v. Morris, 281 Va. 70, 79, 705 S.E.2d 503, 507 (2011) (quoting Blowe v. Peyton, 208 Va. 68, 74, 155 S.E.2d 351, 356 (1967)).

The first predicate exigent circumstance, imperative public importance, is not at issue in this case. Our certification order invoked only the second predicate exigent circumstance, the administration of justice. DRHI, Inc. v. Hanback, Record No. 140605 (Apr. 22, 2014). However, the plain language of Code § 17.1-409(B)(2) makes clear that the General Assembly intended that predicate to apply only when the Court of Appeals cannot timely do its work. Such a determination should not be made lightly. Neither that court nor the parties represented to us that such a condition existed and we had no basis to believe it did.

Nevertheless, the majority asserts that certification was warranted here in the interests of judicial economy. But the General Assembly did not include judicial economy in Code § 17.1-409(B) as a predicate for certifying a case from the Court of Appeals. Thus, mere judicial economy cannot create subject matter jurisdiction.

The majority compares this case to Nusbaum v. Berlin, 273 Va. 385, 641 S.E.2d 494 (2007), and Petrosinelli v. People for the

13

Ethical Treatment of Animals, Inc., 273 Va. 700, 643 S.E.2d 151 (2007). In Nusbaum, the circuit court imposed on an attorney both a monetary sanction for misconduct and a criminal penalty for contempt, arising from a single incident. Id. at 390, 397, 641 S.E.2d at 496, 500. The attorney filed a petition for appeal in this Court challenging the monetary sanction for misconduct. He filed a separate appeal in the Court of Appeals challenging the contempt penalty. Id.

In Petrosinelli, the circuit court imposed on an attorney a civil penalty for contempt. 273 Va. at 705-06 & n.12, 643 S.E.2d at 154 & n.12. It also imposed on the attorney's firm a monetary sanction for misconduct under Code § 8.01-271.1. Williams & Connolly, LLP v. People for the Ethical Treatment of Animals, Inc., 273 Va. 498, 509, 643 S.E.2d 136, 140 (2007). The firm filed a petition for appeal in this Court, id., and the attorney filed an appeal in the Court of Appeals. Petrosinelli, 273 Va. at 706, 643 S.E.2d at 154.

In both cases, the Court certified the contempt appeal pending in the Court of Appeals under the administration of justice predicate set forth in Code § 17.1-409(B)(2). Nusbaum, 273 Va. at 390, 641 S.E.2d at 496; Petrosinelli, 273 Va. at 706, 643 S.E.2d at 154.

Assuming, arguendo, that the circumstances in Nusbaum and Petrosinelli actually were sufficient to satisfy Code § 17.1-409(B)(2), they are distinguishable. Both of the appeals certified from the Court of Appeals involved a ruling imposing a penalty for contempt--a ruling factually intertwined with a separate ruling awarding monetary sanctions. This Court unquestionably had subject

14

matter jurisdiction over the latter under Code § 8.01-670(A)(3). Accordingly, it may have been appropriate to certify the appeals pending in the Court of Appeals where this Court already had an independent basis for subject matter jurisdiction to review an issue "derive[d] from a common nucleus of operative fact," United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (discussing federal pendent jurisdiction over state law claims), with an issue then before the Court of Appeals.

However, there is no need to explore whether Nusbaum and Petrosinelli were correctly decided because in this case there is only one ruling. The fact that the party dissatisfied with a judgment pursued appeals in two courts at the same time is not an adequate basis for this Court to certify the appeal pending in the Court of Appeals under the administration of justice predicate set forth in Code § 17.1-409(B)(2).

Accordingly, having determined that the subject matter of the petition for appeal in Record Number 131974 is, under Code § 19.2-318, within the jurisdiction of the Court of Appeals, this Court lacks subject matter jurisdiction to hear it. The Court therefore should dismiss the petition for appeal as improvidently granted. Similarly, having improperly certified the appeal in Record Number 140605 from the Court of Appeals without justification under either of the predicates set forth in Code § 17.1-409(B), the Court should vacate its order certifying that appeal, thereby returning the case to that court for review on the merits. While such a disposition

15

may not be in the interests of judicial economy, lack of subject matter jurisdiction trumps judicial economy. I therefore must dissent.

A Copy,

Teste:

Pate L Hamister

Clerk

16